**2023-2437**

# United States Court of Appeals
# for the Federal Circuit

RECENTIVE ANALYTICS, INC.,

*Plaintiff-Appellant,*

– v. –

FOX CORP., FOX BROADCASTING COMPANY, LLC,
FOX SPORTS PRODUCTIONS, LLC,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the
District of Delaware in No. 1:22-cv-01545-GBW
Honorable Gregory B. Williams*

## APPELLEES' BRIEF

RANJINI ACHARYA
MICHAEL ZELIGER
PILLSBURY WINTHROP SHAW
  PITTMAN LLP
2550 Hanover Street
Palo Alto, California 94304
(650) 233-4500
ranjini.acharya@pillsburylaw.com
michael.zeliger@pillsburylaw.com

EVAN FINKEL
MICHAEL HORIKAWA
PILLSBURY WINTHROP SHAW
  PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, California 90017
(213) 488-7100
evan.finkel@pillsburylaw.com
michael.horikawa@pillsburylaw.com

*Counsel for Defendants-Appellees*

FEBRUARY 23, 2024



## PATENT CLAIMS AT ISSUE

### U.S. Patent No. 10,911,811:

1. A computer-implemented method for dynamically generating a network map, the method comprising:

> receiving a schedule for a first plurality of live events scheduled to start at a first time and a second plurality of live events scheduled to start at a second time;

> generating, based on the schedule, a network map mapping the first plurality of live events and the second plurality of live events to a plurality of television stations for a plurality of cities,

>> wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities,

>> wherein the network map identifies for each station (i) a first live event from the first plurality of live events that will be displayed at the first time and (ii) a second live event from the second plurality of live events that will be displayed at the second time, and

>> wherein generating the network map comprises using a machine learning technique to optimize an overall television rating across the first plurality of live events and the second plurality of live events;

> automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) underlying criteria,

>> wherein updating the network map comprises updating the mapping of the first plurality of live events and the second plurality of live events to the plurality of television stations; and

> using the network map to determine for each station (i) the first live event from the first plurality of live events that will be displayed at the first time and (ii) the second live event from the second plurality of live events that will be displayed at the second time.

**U.S. Patent No. 10,958,957:**

1. A computer-implemented method for dynamically generating a network map, the method comprising:

> obtaining a schedule for a first plurality of events scheduled to start at a first time and a second plurality of events scheduled to start at a second time;
>
> generating, based on the schedule, a network map mapping the first plurality of events and the second plurality of events to a plurality of television stations for a plurality of cities,
>
>> wherein each station from the plurality of stations corresponds to a respective city from the plurality of cities,
>>
>> wherein the network map identifies for each station (i) a first event from the first plurality of events that will be displayed at the first time and (ii) a second event from the second plurality of events that will be displayed at the second time, and
>>
>> wherein generating the network map comprises using a machine learning technique to optimize an overall television rating across the first plurality of events and the second plurality of events;
>
> automatically updating the network map on demand and in real time based on a change to at least one of (i) the schedule and (ii) underlying criteria,
>
>> wherein updating the network map comprises updating the mapping of the first plurality of events and the second plurality of events to the plurality of television stations; and
>
> using the network map to determine for each station (i) the first event from the first plurality of events that will be displayed at the first time and (ii) the second event from the second plurality of events that will be displayed at the second time.

## U.S. Patent No. 11,386,857:

1. A computer-implemented method of dynamically generating an event schedule, the method comprising:

> receiving one or more event parameters for series of live events, wherein the one or more event parameters comprise at least one of venue availability, venue locations, proposed ticket prices, performer fees, venue fees, scheduled performances by one or more performers, or any combination thereof;

> receiving one or more event target features associated with the series of live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof;

> providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model;

> iteratively training the ML model to identify relationships between different event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model;

> receiving, from a user, one or more user-specific event parameters for a future series of live events to be held in a plurality of geographic regions;

> receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events;

> providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model;

> generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features;

detecting a real-time change to the one or more user-specific event parameters;

providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and

updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real-time change to the one or more user-specific event parameters.

## U.S. Patent No. 11,537,960:

1. A computer-implemented method of dynamically generating an event schedule, the method comprising:

receiving one or more event parameters for one or more series of live events, wherein the one or more event parameters comprise scheduling information for one or more performances by one or more performers;

receiving one or more event target features associated with the series of live events, wherein the one or more event target features comprise at least one of event attendance, event profit, event revenue, event expenses, or any combination thereof;

providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model;

iteratively training the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model;

receiving, from a user, one or more user-specific event parameters for a future series of live events associated with a first performer, the user-specific event parameters including scheduling information for one or more future performances by at least one second performer;

receiving, from the user, one or more user-specific event weights representing one or more prioritized event target features associated with the future series of live events;

providing the one or more user-specific event parameters and the one or more user-specific event weights to the trained ML model; generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features;

detecting a real-time change to the scheduling information for the one or more future performances by the at least one second performer; providing the real-time change to the trained ML model to improve the accuracy of the trained ML model; and

updating, via the trained ML model, the schedule for the future series of live events such that the schedule remains optimized relative to the one or more prioritized event target features in view of the real time change to the scheduling information for the one or more future performances by the at least one second performer.

## CERTIFICATE OF INTEREST

Undersigned counsel for Defendants-Appellees Fox Corp., Fox Broadcasting Company, LLC, and Fox Sports Productions, LLC (collectively, "Fox") certifies as follows:

**1.     The full name of every entity represented by undersigned counsel is:**

Fox Corporation; Fox Broadcasting Company, LLC; Fox Sports Productions, LLC.

**2.     The full names of every real party in interest for the entities:**

None/not applicable

**3.     The full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities:**

For Fox Corporation: none. For Fox Broadcasting Company, LLC: Fox Corporation is the ultimate parent corporation. For Fox Sports Productions, LLC: Fox Corporation is the ultimate parent corporation.

**4.     All law firms, partners, and associates that have not already entered an appearance in this Court but (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities:**

Faegre Drinker Biddle & Reath LLP: Francis DiGiovanni and Thatcher A. Rahmeier.

**5.     The title and number of any pending case that will be directly affected by this court's decision in this appeal (other than the originating case):**

None/not applicable.

**6.     Organizational victims and bankruptcy cases:**

None/not applicable.

By: */s/ Ranjini Acharya*
Ranjini Acharya

# TABLE OF CONTENTS

PATENT CLAIMS AT ISSUE..................................................................... i

CERTIFICATE OF INTEREST ............................................................... vi

STATEMENT OF RELATED CASES....................................................1

STATEMENT OF ISSUES ........................................................................1

STATEMENT OF THE CASE...................................................................1

    I.  The Patents-in-Suit ............................................................................2

        A. The Network Map Patents..........................................................2

            1.  Prosecution of the Network Map Patents...............................4

            2.  Representative Claim of the Network Map Patents ...............6

        B. The Machine Learning Training Patents ...................................7

            1.  Prosecution of the Machine Learning Training Patents........9

            2.  Representative Claim of the Machine Learning Training Patents ......10

    II. Procedural history.........................................................................11

SUMMARY OF ARGUMENT ...............................................................14

ARGUMENT ...........................................................................................15

    I.  Standard of review .........................................................................15

    II. The district court correctly concluded that the Patents-in-Suit do not claim patent eligible subject matter........................................16

        A. The claims seek to patent an abstract idea ..............................16

            1.  The claims are directed to the selection and analysis of routine and conventional information ....................................17

            2.  The claims simply describe the use of generic computer technologies in purely functional terms ..............................21

            3.  The claims simply describe the production of improved data relative to conventional methods.......................................25

B. Recentive's cited cases are unavailing ....................................................28

C. The Patent Office's guidance is not controlling and is distinguishable...32

III. The claims fail to disclose an inventive concept ...........................................34

IV.    No factual disputes or issues of claim construction precluded the district court's ruling..........................................................................................36

A. There are no claim construction issues.....................................................36

B. There are no factual disputes .................................................................38

V. The district court correctly denied leave to amend on the ground that any further amendments would be futile ...........................................................42

CONCLUSION ......................................................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Abel*,
  838 F. App'x 558 (Fed. Cir. 2021) ...................................................33

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)......................................................*passim*

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007) ...............................................15

*In re Bd. of Trustees of Leland Stanford Junior Univ.*,
  991 F.3d 1245 (Fed. Cir. 2021) .....................................24, 27

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*,
  908 F.3d 872 (3d Cir. 2018) ...............................................15

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017) ...........................................37

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) .......................................39-40

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ...........................................27

*Doe v. Princeton Univ.*,
  30 F.4th 335 (3d Cir. 2022) ................................................39

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) .................................18, 19, 41

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) .......................................28, 31

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) .......................................15, 32

*Fast 101 Pty Ltd. v. CitiGroup Inc.*,
  834 F. App'x 591 (Fed. Cir. 2020) ...........................15, 43, 44

ix

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ....................................28, 29

*In re Greenstein*,
    782 F. App'x 1035 (Fed. Cir. 2019)....................................16

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) ........................................30

*Health Discovery Corp. v. Intel Corp.*,
    577 F. Supp. 3d 570 (W.D. Tex. 2021), *remanded on other grounds, Health
    Discovery Corp. v. Intel Corp.,* No. 2022-1446, 2022 WL 1681675 (Fed. Cir.
    May 26, 2022)..............................................................25

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
    No. 2022-1861, 2024 WL 89642 (Fed. Cir. Jan. 9, 2024)................24

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.,*
    50 F.4th 1371 (Fed. Cir. 2022) ....................................41, 42

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ........................................32

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019) ....................................29, 30

*Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*,
    823 F.3d 184 (3d Cir. 2016) ........................................16, 44

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ................................29, 31, 32

*PersonalWeb Techs. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) ........................................35

*Power Analytics Corp. v. Operation Tech., Inc.,*
    No. SACV1601955JAKFFMX, 2017 WL 5479638 (C.D. Cal. May 10, 2017)
    *aff'd sub nom*, Fed. App'x 334 (Fed. Cir. 2019), *cert. denied*,
    140 S. Ct. 910 (2020)..............................................24, 25

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) ....................................27, 35

*In re Rudy*,
   956 F.3d 1379 (Fed. Cir. 2020) ....................................................32, 33

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ...............................................6, 22, 27

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019) ...........................................29, 30, 31

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ....................................................25

*Trinity Info Media, LLC v. Covalent, Inc.*,
   72 F.4th 1355 (Fed. Cir. 2023) ....................................19, 20, 37, 38

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ....................................................20

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020) ...............................................29, 30

*Universal Secure Registry LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) ....................................................15

*WhitServe LLC v. Dropbox, Inc.*,
   854 F. App'x 367 (Fed. Cir. 2021).................................................37

## Statutes and Codes

United States Code,
   Title 35, Section 101 .................................................................*passim*
   Title 35, Section 103 ....................................................................6
   Title 35, Section 112(b) ................................................................6

## Rules and Regulations

Federal Rule of Civil Procedure,
   Rule 12(b)(6)........................................................................15, 45

## STATEMENT OF RELATED CASES

There are no other appeals in or from the same civil action or proceeding in the originating tribunal that were previously before this or any other appellate court.

## STATEMENT OF ISSUES

(1)    Whether the district court correctly concluded that the Patents-in-Suit are not directed to patent eligible subject matter.

(2)    Whether the district court correctly concluded that Recentive failed to plausibly allege an inventive concept recited by the claims of the Patents-in-Suit.

(3)    Whether the district court correctly denied leave to amend on the ground that any amendment would be futile.

## STATEMENT OF THE CASE

This case presents a straightforward determination of patent ineligibility under *Alice* and its progeny that led the district court to dismiss the case at the pleadings stage. The claims of the Patents-in-Suit simply seek to automate long-standing human endeavors, involving the creation of network maps and event schedules using known machine learning techniques, and hence cover the selection and analysis of mathematical information using generic computer technology. The subject matter of these claims is ineligible for patent protection, and the absence of any factual disputes or issues of claim construction that would impact that analysis underscore the fact that there is no viable basis for the claims to survive. Moreover, Plaintiff-

Appellant Recentive Analytics, Inc. ("Recentive") already availed itself of the opportunity to amend its complaint once – and it was unable to articulate with the requisite specificity any further amendment that, if accepted as true, would plausibly allege that the claims recite patent-eligible subject matter. Accordingly, the district court properly determined that leave to amend would be futile and granted Fox's motion to dismiss with prejudice. There is no error. This Court should affirm.

## I.    The Patents-in-Suit

This case concerns two families of patents. The first, comprising U.S. Patent No. 10,911,811 ("the '811 patent") and U.S. Patent No. 10,958,957 ("the '957 patent"), is collectively referred to herein as the "Network Map Patents." The '957 patent is a continuation of the '811 patent, and the two share the same title and specification. The second family, comprising U.S. Patent No. 11,386,367 ("the '367 patent") and U.S. Patent No. 11,537,960 ("the '960 patent"), is collectively referred to herein as the "Machine Learning Training Patents." The '960 patent is a continuation of the '367 patent, and the two share the same title and specification. The Network Map Patents and the Machine Learning Training Patents are collectively referred to as the "Patents-in-Suit."

### A.    The Network Map Patents

The Network Map Patents are generally directed to computer-implemented methods for generating a "network map," which is a "schedule that outlines which

content will be displayed on which channel at a certain time." *See, e.g.,* Appx116 at 1:14-17; Appx77 at ¶ 19. Conventional techniques are said to be inferior because they are "entirely manual, static and incapable of responding to changing conditions . . . and unable to forecast the impact of a proposed schedule change." *See* Appx116 at 1:24-29; Appx41 at ¶ 18 ("Conventional processes were also unable to prioritize certain parameters or target criteria in the creation of event schedules, could not be iteratively trained, and were not capable of collecting and analyzing social media data to forecast the impact on the future series of live events."). The claimed solution of the Network Map Patents is to automate this process, based on "a computer algorithm designed to optimize a certain parameter," and/or "based on real time data," whereby the network map "can be dynamically updated based on changing conditions[.]" Appx116 at 1:35-47.

The Network Map Patents do not disclose a particular computer system that performs the claimed method. Rather, the specification discloses "a generic computing device" that may be used with the claimed techniques, with a general description of common computing components: a processor, memory, display, communication interface, and so on. *See* Appx118 at 5:4-6; 5:6-6:37; 6:39-49. The Network Map Patents also do not provide any details of the algorithm that executes the claimed method. Rather, the specification recites a generic list of machine learning techniques and training data that may be used. *See* Appx117 at 3:21-26 ("In

general, any suitable machine learning technique can be used, for example, a gradient boosted random forest, a regression, a neural network, a decision tree, a support vector machine, a Bayesian network, etc., as just a few examples."). And finally, the Network Map Patents make it clear that "[t]he machine learning technique can be trained using *any suitable training data*…includ[ing] weather data, news data, and/or gambling data (*e.g.,* odds data generated by sports books)." *See* Appx117 at 3:26-30 (emphasis added).

## 1. Prosecution of the Network Map Patents

The Examiner initially rejected the pending claims of the '811 patent under Section 101 because the claims simply recited "mental processes capable of being performed in the human mind or on pen and paper," and the claimed machine learning techniques were simply "code written to allow a computer to learn a pattern using models, which is also interpreted as capable of being performed in the human mind or on pen and paper[.]" Appx231. This rejection was eventually withdrawn, but not in the manner Recentive now describes.

Recentive asserts that, in response to the Examiner's rejection, it "amended pending claim 1 to require generating a network map 'using a machine learning technique and data,' which is updated 'on demand and in real time' based on 'a user entered change to … the underlying criteria,'" and that "*with this amendment*," the

Examiner concluded that the claims were directed to patentable subject matter. *See* Recentive Brief, at p. 11 (citing Appx459) (emphasis added). This is misleading.

In fact, Recentive relied on two ***other*** limitations that were also added in response to the Section 101 rejection: "displaying the network map to a user on a display having a graphical user interface depicting the network map in chart form," and "displaying an updated network map to the user on the display having the graphical user interface depicting the updated network map in chart format." *See* Appx240. Recentive referenced ***solely*** to these "displaying" steps in its response to the rejection. *See* Appx244 ("the portions of the claim that recite the structure and function of the 'display having a graphical user interface' are additional elements that integrate the claimed subject matter into a practical application," "the newly added 'displaying steps' do not recite abstract ideas," "the 'displaying steps' are additional elements of independent claim 1" under *Alice*); Appx245 ("the displaying steps recited in claim 1 reflect an improvement to computer-based network map generation systems and therefore integrate the claimed subject matter into a practical application"); Appx246 ("the displaying steps recited in amended independent claim 1 are addressed to and resolve a specifically identified problem in the prior state of the art of network map generation."). Recentive did not refer to any other amendments to its claims.

The Examiner then rejected the claims (as amended) on a new ground of rejection: that the claims were indefinite under 35 U.S.C. § 112(b) and obvious under § 103. Appx253–254. The Examiner found Recentive's arguments with respect to Section 101 mooted by this new ground of rejection. Appx253. In a subsequent response, and despite having previously *relied* on the addition of the "displaying steps" to overcome the Section 101 rejection, Recentive deleted these limitations and the '811 patent issued without these limitations. *See* Appx263. The Examiner did not revisit the Section 101 rejection during the remaining prosecution of the '811 patent.[1]

The '957 continuation patent was allowed without any substantive office actions as to patent eligibility.

### 2.    Representative Claim of the Network Map Patents

The district court found claim 1 of the '811 patent representative of all claims of the Network Map Patents. Appx14-15. Recentive does not challenge the district court's decision on representativeness. Recentive Brief, at p. 13, n. 3. Claim 1 recites a "computer-implemented method" capturing four steps: (1) a collecting step, *i.e.*

---

[1] To the extent that the Examiner was persuaded by Recentive's addition of the "displaying" steps to overcome the Section 101 rejection, doing so would have been in error. *See, e.g., SAP Am., Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1168 (Fed. Cir. 2018) ("Here[,] the focus of the claims is not a physical-realm improvement but an improvement in wholly abstract ideas—the selection and mathematical analysis of information, *followed by reporting or display of the results*.") (emphasis added).

"receiving" current schedules of live events starting at two different time slots; (2) an analyzing step, *i.e.* using a "machine learning technique" to generate a network map that optimizes tv ratings; (3) an updating step, *i.e.* automatically updating the network map "on demand" and "in real time" based on changes to either the schedule or certain "underlying criteria"; and (4) a using step, *i.e.* using that network map to guide decision-making as to which event will be shown on which tv station. *See* Appx17; *and see* Appx120 at 9:65-10:33.

**B.    The Machine Learning Training Patents**

The Machine Learning Training Patents are directed to computer-implemented methods for optimizing events such as concerts or rallies that take place across multiple locations over several months, or scheduling multiple performers to perform at a particular venue. *See, e.g.,* Appx144 at 1:6-10; *id.* at 1:18-26. Conventional techniques are criticized because the failure to consider factors such as "competing events, expenses, ticket prices, weather, performer availability, venue availability, etc." can "lead to sub-optimal schedules that generate little interest among consumers and/or result in low attendance or ticket sales." Appx144 at 1:26-33; *see also* Appx41 ¶ 18.

The claimed solution of the Machine Learning Training Patents is to automate this process, based on "computer-implemented systems and methods," that determine an "optimized schedule," which can be updated "based on real-time data,"

and "dynamically updated in response to changes in this data." *See* Appx144 at 1:43-67. The schedule is generated through the use of a machine learning model (*see e.g., id.* at 2:18-20), which is iteratively trained to "recognize how to optimize, maximize, or minimize one or more of the target features based on a given set of input parameters." Appx146 at 5:65-6:21; *see also* Appx49 at ¶ 31.

As with the Network Map Patents, the Machine Learning Training Patents do not disclose a particular computer system that performs the claimed method. Rather, the "operations described in this specification can be implemented…by a data processing apparatus…including by way of example a programmable processor, a computer, a system on a chip, or multiple ones, or combinations, of the foregoing." *See* Appx149 at 11:11-14. *See also id.* at 11:15-19 ("The term 'data processing apparatus' encompasses all kinds of apparatus, devices, and machines for processing data, including by way of example a programmable processor, a computer, a system on a chip, or multiple ones, or combinations, of the foregoing."). Likewise, the Machine Learning Training Patents recognize that "[i]n general, any suitable machine learning technique can be used, such as, for example: a gradient boosted random forest, a regression, a neural network, a decision tree, a support vector machine, a Bayesian network, other type of technique." Appx146 at 5:67-6:5; Appx147 at 7:58-62. And again, the Machine Learning Training Patents can be trained using training data comprising "historical data from previous live events or

series of live events," such as "dates, venue locations, ticket prices, social media data," "attendance, revenue, expenses, etc." *See* Appx146 at 6:7-15.

### 1.    Prosecution of the Machine Learning Training Patents

All the claims in the application that led to the '367 patent were initially rejected under Section 101 because the claimed method "is directed to an abstract idea without significantly more", to wit, a process "for generating and updating a schedule" that "covers performance of the limitation in the mind (comparing or categorizing information) but for the recitation of generic computer components." Appx273-274. In response, Applicant argued that the (amended) claims were "necessarily rooted in computer technology," "through the use of machine learning." Appx298. The Examiner disagreed, noting "[w]hile the additional element of machine learning may improve the accuracy and/or automation of data processing, the addition of machine learning in the claim limitations herein does not make the claim rooted in computer technology or improve the functioning of a computer," and that "[t]he machine learning process improves the accuracy of scheduling events and is not an improvement to machine learning technology or the functioning of a computer device." Appx312-313.

In a series of narrowing amendments, Applicant eventually limited the claims to two types of known machine learning models ("at least one of a neural network ML model and a support vector ML model") and additionally specified iteratively

training the ML model to improve overall accuracy. *See, e.g.,* Appx337; Appx347; Appx355. The Examiner accepted these amendments. Appx370.

The '960 continuation patent was allowed without any substantive Office Actions.

### 2.    Representative Claim of the Machine Learning Training Patents

The district court found claim 1 of the '367 patent representative of all claims of the Machine Learning Training Patents. Appx15. Recentive does not challenge this. Recentive Brief, at p. 13, n. 3. Again, claim 1 of the '367 patent recites a "computer-implemented method" that captures four steps: (1) a collecting step, *i.e.,* "receiving" a list of event parameters (performers, venues, ticket prices) and "target features" (attendance, profit, revenue); (2) a training step, *i.e.* providing the event parameters and target features to the machine learning model and "iteratively training" it to identify relationships between the event parameters and the target features; (3) an output step, *i.e.* "generating" a schedule for future live events that is optimized relative to the prioritized target features; and (4) an updating step, *i.e.* detecting real-time changes to the inputs and updating a machine learning model so that the event schedule remains optimized. *See* Appx17; *and see* Appx150 at 14:2-49.

## II.    Procedural history

Fox's motion to dismiss the first amended complaint (*see* Appx172) came after Fox filed an earlier motion to dismiss Recentive's original complaint, which included only the Network Map Patents, on the grounds that the Network Map Patents simply claim a long-standing human endeavor that is automated by replacing the human decision-maker with generic computing technology. *See* Appx181. In response to Fox's first motion, Recentive filed its first amended complaint, adding the Machine Learning Training Patents and a host of additional factual allegations about the Patents-in-Suit. *See* Appx72-109 (showing Recentive's amendments to its original complaint in redline).

Fox moved to dismiss Recentive's first amended complaint on the grounds that none of the claims of the Patents-in-Suit claims patent eligible subject matter. Appx172. Fox argued that the Machine Learning Training Patents, like the Network Map Patents, claimed patent ineligible subject matter: although tied to the field of machine learning, Fox argued that the claims amount to the selection and analysis of mathematical information using generic computer technology, which remains an unpatentable abstract idea. Appx181.

Following briefing and having held a hearing that lasted over an hour, the district court granted Fox's motion with prejudice. Appx1. In a well-reasoned and thoroughly supported opinion, the district court analyzed the Patents-in-Suit and

held that the claims are directed to the abstract ideas of producing network maps and event schedules, using known generic mathematical techniques. See Appx16. In reaching this conclusion, the district court first set forth Recentive's characterizations of the "central inventive contribution[s]" of the Patents-in-Suit, describing the Network Map Patents as the "application of trained machine learning algorithms to generate network maps that are dynamically updated and optimized in real time," and the Machine Learning Training Patents as the use of those trained machine learning algorithms to "generate event schedules that are dynamically updated and optimized in real-time." Appx16 (quoting Appx391-392). The district court found that this simply reflects a method to "collect information, analyze it, and display certain results of the collection, a familiar class of claims directed to a patent-ineligible concept." Appx17-18 (internal quotation marks and citations omitted). Accordingly, the district court found that the claims of the Patents-in-Suit do not claim patent eligible subject matter.

The district court also properly found that there were no issues of claim construction or factual disputes that would preclude it from deciding Fox's motion at the pleadings stage. Appx9-11. With respect to the former, the district court noted that Recentive failed to provide any proposed claim construction or explanation of why any proposed claim construction would alter the Section 101 analysis, including during oral argument. *See* Appx10. Indeed, at the hearing, Recentive's counsel

raised an entirely ***new*** claim construction issue (which the district court nevertheless addressed in its order) but did not otherwise explain how it or any other claim construction issue affected subject matter eligibility. *See id*, n. 2; *see also* Appx612-613. And with respect to the latter, the district court specifically held that it "dr[ew] all assumptions in favor of Recentive at this stage," and "accept[ed] Recentive's factual allegations as true at this stage,"[2] but found that they ultimately did "not change the analysis" of the court. Appx10-11. Accordingly, the district court properly dismissed Recentive's claims at the pleadings stage. *Id.*

Finally, the district court properly granted Fox's motion with prejudice, denying Recentive the opportunity to further amend its complaint. Appx26. Recentive had already availed itself of the opportunity to amend its complaint once – and was unable to articulate with the requisite specificity any further amendment that, if accepted as true, would plausibly allege that the claims recite patent-eligible subject matter. The district court noted that the first amended complaint had only attached the Patents-in-Suit to the complaint and that the "claims of the patents say what they say." Appx26. Accordingly, the district court properly determined that leave to amend would be futile and granted Fox's motion to dismiss with prejudice.

---

[2] Even though the court considered several of Recentive's factual assertions to be "the sorts of 'mere conclusory statements that a court may disregard at the 12(b)(6) stage." Appx10.

## <u>SUMMARY OF ARGUMENT</u>

(1)    The district court correctly concluded that the Patents-in-Suit are not directed to patent eligible subject matter. The claims of the Patents-in-Suit simply seek to automate long-standing human endeavors, involving the creation of network maps and event schedules using known machine learning techniques, and hence cover the selection and analysis of mathematical information using generic computer technology. That is not patent eligible subject matter.

(2)    The district court correctly concluded that Recentive failed to allege an inventive concept recited by the claims of the Patents-in-Suit. The claims recite nothing more than the application of known machine learning algorithms, running on generic computers, to generate network maps and event schedules that reflect real-time updates in the underlying data. That is not sufficient to transform the claimed subject matter into a patent eligible invention.

(3)    The district court correctly denied leave to amend on the ground that any amendment would be futile. The court found that there were no factual disputes or issues of claim construction that precluded the review of the claims at the pleadings stage, and also found that Recentive had already availed itself of the opportunity to amend its complaint once and had failed to plausibly allege that the claims recite patent-eligible subject matter. Accordingly, the

district court properly determined that any further amendments would be futile and therefore correctly denied leave to amend.

## ARGUMENT

### I.    Standard of review.

Patent eligibility under 35 U.S.C. § 101 is a question of law, and so this Court reviews *de novo* the determination that a claim is directed to patent-ineligible subject matter. *Universal Secure Registry LLC v. Apple Inc.,* 10 F.4th 1342, 1345-46 (Fed. Cir. 2021).

This Court applies the law of the regional circuit when reviewing a district court's disposition of a motion to dismiss for failure to state a claim. *FairWarning IP, LLC v. Iatric Sys., Inc.,* 839 F.3d 1089, 1092 (Fed. Cir. 2016). Under the law of the Third Circuit, a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007). This Court, applying Third Circuit law, has previously reviewed a district court's denial of leave to amend to address patent subject matter eligibility for abuse of discretion. *See Fast 101 Pty Ltd. v. CitiGroup Inc.,* 834 F. App'x 591, 593 (Fed. Cir. 2020) (*citing City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.,* 908 F.3d 872, 878 (3d Cir. 2018)). However, the Third Circuit has on occasion undertaken *de novo* review of a

denial of leave to amend based on futility. *See, e.g., Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.,* 823 F.3d 184, 189 (3d Cir. 2016).

## II.    The district court correctly concluded that the Patents-in-Suit do not claim patent eligible subject matter.

Recentive criticizes the district court's reasoning as having "zoomed out too much, to the point of missing the trees for the forest." Recentive Brief, at p. 15. But a closer look at the "trees" supports, rather than negates, the district court's reasoning.[3]

### A.    The claims seek to patent an abstract idea.

The central premise of Recentive's assertions is that it has invented methods to "iteratively train" a machine learning algorithm to "find useful patterns" in "vast amounts" of data based on "user selected parameters and real time data," and to then apply these patterns to create "optimized" network maps and event schedules in real time. Recentive Brief, at pp. 5-6. Recentive claims that "[u]sing the prior conventional approach, humans (even assisted by powerful computers) lacked the technical ability to identify these useful patterns and use them to generate optimal maps and schedules." *Id.* at 5.

---

[3] The focus of this brief is, as it should be, on the disclosure and claims of the Patents-in-Suit, and not on Recentive's many references to its commercial "software platform." *See, e.g.,* Recentive Brief, at pp. 1, 2, 3, 4, 5, 6, 11, 12, 26. Whether or not Recentive has a commercially successful product, "is insufficient to transform the claims into a patent-eligible application." *In re Greenstein*, 782 F. App'x 1035, 1038 (Fed. Cir. 2019).

The claims of the Patents-in-Suit, described in Recentive's own words, fail *Alice* step one. The purported invention reflects merely the selection and analysis of routine and conventional information, using routine and conventional computer technology, to produce more "optimal" versions of routine and conventional maps and schedules. This is, simply, an unpatentable abstract idea.

### 1.    The claims are directed to the selection and analysis of routine and conventional information.

Recentive's claimed machine learning models select and analyze routine and conventional types of information. As a preliminary matter, the specification of the Network Map Patents makes it clear that the claimed machine learning technique uses "any suitable training data," including "weather data, news data, and/or gambling data[.]" Appx117 at 3:26-30. Similarly, the Machine Learning Training Patents describe training the claimed machine learning models using "a set of training data," such as "dates, venue locations, ticket prices, social media data [and] attendance, revenue, expenses, etc." Appx146 at 6:5-11. These types of data were well-known and routinely analyzed, including for the generation of the prior art network maps and event schedules. *See, e.g.,* Appx274 ("An event planner or agent could reasonable [*sic*] compile a list of performers and venues to develop a tour schedule and update a proposed schedule as changes occur.").

Nevertheless, Recentive argues, the claims also cover the collection and analysis of ***real-time*** data, which the prior art processes purportedly did not (and

could not) address. *See, e.g.,* Recentive Brief at p. 44 ("Recentive improved upon the historic approaches by using machine learning to dynamically generate optimized maps and schedules based on ***real-time data*** and update them based on changing conditions.") (emphasis added) (internal quotation marks and citations omitted). Recentive argues that this takes its claims out of the abstract because, "it would be impossible for a human to produce near-simultaneous updates to network maps or event schedules based on real-time data[.]" *Id.* at 39-40 (internal quotation marks and citations omitted).

This Court has already considered, and rejected, this argument on multiple previous occasions. For example, in *Electric Power Group*, this Court confirmed that claims directed to "detecting events on an interconnected electric power grid in ***real time*** over a wide area and automatically analyzing the events on the interconnected electric power grid" were directed to an abstract idea, even though a human could not detect or analyze such events. *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (emphasis added). In so doing, this Court noted particularly that "collecting information, including when limited to particular content (which does not change its character as information)," and that "analyzing information . . . ***by mathematical algorithms***, without more, as essentially mental processes within the abstract-idea category." *Id.* at 1354 (emphasis added). Recentive attempts to distinguish *Electric Power Group* on the

basis that its patents are directed to "a unique and specific process of dynamically generating maps and schedules—not merely to running data through an algorithm that mimics mental processes." Recentive Brief, at pp. 37-38. But that is a distinction without a difference. Recentive's claims simply reflect the collection and analysis of information—and, under this Court's reasoning in *Electric Power Group*, even doing so in "real-time' to "dynamically generate" the claimed maps and schedules does not confer patent eligibility.

Similarly, in *Trinity*, this Court considered—and again rejected—a similar argument that claims directed to a poll-based networking and e-commerce system that involved real-time data analysis were eligible for patent protection, because humans cannot "perform nanosecond comparisons and aggregate result values with huge numbers of polls and members." *Trinity Info Media, LLC v. Covalent, Inc.,* 72 F.4th 1355, 1363 (Fed. Cir. 2023). Instead, this Court confirmed that "claims can be directed to an abstract idea even if the claims . . . require operations that a human could not perform as quickly as a computer." *Id.* at 1364. The district court squarely addressed *Trinity* in its order, and found its reasoning "highly persuasive". Appx19-21. Recentive casts this decision as "even further afield" from its claims. Recentive Brief, at p. 39. But its subsequent argument is telling: Recentive argues that its claims focus on an improvement to software technology because "it would be impossible for a human to produce near-simultaneous updates to network maps or event

schedules based on real-time data." *Id.* at 39-40 (internal quotation marks and citations omitted). This is no different from the argument that this Court already considered and rejected in *Trinity*, when it held that claims can be directed to an abstract idea even if the claims require operations that a human cannot perform as quickly as a computer, and it is certainly not sufficient to add an inventive gloss to Recentive's claims. *See also* Appx20 ("[T]he fact that a human cannot literally do the claimed process is not a barrier when the process itself is abstract. Just as a human cannot literally communicate over a computer network, humans cannot literally run a machine learning algorithm. However, each process remains abstract, as they are directed to an abstract idea.").

Recentive's argument that its claimed techniques "do not mimic mental processes, but are separate structures or architectures that receive, process, and generate data in a unique manner," is equally unavailing. Recentive Brief, at p. 40; *id.* at p. 37 and p. 40 (same). This Court has already confirmed as much. *See Trinity*, 72 F.4th at 1362 ("Nor are we persuaded that requiring processors configured to perform operations with web servers, a database, and a match aggregator changes the focus of the asserted claims.") (*citing Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1333, 1337–40 (Fed. Cir. 2017) (finding claims involving "improved scalable architecture for delivering real-time information" ineligible for patent protection)).

### 2. The claims simply describe the use of generic computer technologies in purely functional terms.

Recentive's claimed machine algorithm models simply recite, in functional terms, generic computer technologies doing what computers do. This, too, fails to claim any patentable subject matter.

As an initial matter the Patents-in-Suit contemplate the claimed methods being run on generic computer hardware. *See, e.g.,* Appx118 at 5:4-15 (describing a "generic computing device [] which may be used with the techniques described in this disclosure," and then listing various generic components such as a processor, memory, display, communications interface, transceiver, etc.); Appx149 at 11:11-19 (noting that the "operations described in the specification can be implemented . . . by a data processing apparatus . . . including by way of example a programmable processor, a computer, a system on a chip, or multiple ones, or combinations, of the foregoing."); *id.* at 15-19 ("The term 'data processing apparatus' encompasses all kinds of apparatus, devices, and machines for processing data, including by way of example a programmable processor, a computer, a system on a chip, or multiple ones, or combinations, of the foregoing."). These are precisely the sorts of claims that *Alice* definitively prohibits. *See Alice Corp. Pty. v. CLS Bank Int'l,* 573 U.S. 208, 218 (2014) ("[S]imply implementing a mathematical principle on a physical machine, namely a computer, is not a patentable application of that principle."). These are also the sorts of claims that this Court has previously, repeatedly,

confirmed are directed to unpatentable subject matter. *See, e.g., SAP*, 898 F.3d at 1167 (affirming that claims directed to resampling statistical techniques were not patent eligible, the Court noting that "[i]nformation as such is an intangible, hence abstract, and collecting information, including when limited to particular content (which does not change its character as information), is within the realm of abstract ideas. ***So, too, is analyzing information by mathematical algorithms, without more***.") (emphasis added) (internal quotation marks and citations omitted).[4]

The question therefore is: do the Patents-in-Suit claim "more" than the analysis of information by mathematical algorithms? The answer is no. Recentive admittedly did not invent machine learning (*see* Recentive Brief, at p. 45, "Obviously, Recentive did not invent machine learning."). Nor do the Patents-in-Suit claim a novel machine learning technique. Rather, the Patents-in-Suit make it clear that the claimed algorithms are the product of "***any*** suitable machine learning technique," selected from a list of known and generic machine learning techniques. *See, e.g.,* Appx117 at 3:21-28 ("In general, any suitable machine learning technique can be used, for example, a gradient boosted random forest, a regression, a neural

---

[4] Recentive's attempt to distinguish *SAP* in a footnote falls short. Recentive Brief, at p. 38, n.5. Because the Patents-in-Suit describe the use of machine learning technologies in purely functional terms, they simply focus on the improved ("optimal") network maps and event schedules achieved by using machine learning on generic computer systems and therefore, as in *SAP*, "the focus of the claims is not any improved computer or network, but the improved mathematical analysis." *SAP*, 898 F.3d at 1167-68.

network, a decision tree, a support vector machine, a Bayesian network, etc., as just a few examples."); Appx146 at 5:65-6:5 (same).[5] And Recentive plainly concedes that computers, software, and software algorithms already existed in the prior art that could "capture and organize voluminous quantities very quickly." Recentive Brief, at p. 4 ("The conventional shortcomings were not for lack of computers, software, or algorithms that could capture and organize voluminous quantities of data very quickly").

In other words, the sole aspect of Recentive's claims that it asserts to be inventive is the application of machine learning to the production of network maps and event schedules. *See, e.g.,* Recentive Brief, at pp. 26-27 ("[T]he claims involve specific steps for generating maps and schedules using the identified machine-learning structures and data sets.")

Moreover, the claimed machine learning "techniques" (in the case of the Network Map Patents) and "models" (in the case of the Machine Learning Training Patents) are described in purely functional terms. For example, the claims of the Network Training Patents simply claim, "using a machine learning technique to optimize an overall television rating across the first plurality of live events and the second plurality of live events." Appx132 at 10:25-28. And the Machine Learning

---

[5] In the case of the Machine Learning Training Patents, the claims further narrow this list to one of two machine learning techniques: a neural network model and a support vector model. *See, e.g.,* Appx150 at 14:15-19.

Training Patents similarly claim, "generating, via the trained ML model, a schedule for the future series of live events that is optimized relative to the one or more prioritized event target features." Appx150 at 14:37-39.

Thus, despite Recentive's assertion that the claims explain "how to improve the software's functionality," (Recentive Brief, at p. 38) the claimed machine learning techniques and models are couched in purely results-oriented language, without any explanation of *how* the claimed machine learning technique/model carries out the steps – other than machine learning algorithms doing what machine learning algorithms do. That is not sufficient to meet *Alice* step one. *See, e.g., Int'l Bus. Machines Corp. v. Zillow Grp., Inc.,* No. 2022-1861, 2024 WL 89642, at *5 (Fed. Cir. Jan. 9, 2024) (confirming that claims using "results-oriented language, such as 'receiving a resource response set of results,' 'receiving a user context vector,' 'mapping the user context vector,' and 'controlling the presentation of the resource response set,'" were directed to an abstract idea because they were "directed to improving a user's experience when viewing search results but [did] not contain any specific mechanism for doing so."); *In re Bd. of Trustees of Leland Stanford Junior Univ.,* 991 F.3d 1245, 1250 (Fed. Cir. 2021) (claims "directed to the use of mathematical calculations and statistical modeling," that described only the "generic steps of implementing and processing calculations" without any specific "practical application," were not eligible for patent protection); *Power Analytics Corp. v. Operation Tech., Inc.,* No. SACV1601955JAKFFMX, 2017 WL 5479638 (C.D. Cal.

May 10, 2017) *aff'd sub nom*, Fed. App'x 334 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 910 (2020) (reciting a "machine learning engine" in functional terms is not sufficient to bring the abstract idea into the realm of patentability) (*citing In re TLI Commc'ns LLC Patent Litig.,* 823 F.3d 607, 613-15 (Fed. Cir. 2016)).

Further, the concept of "iteratively training" the claimed machine learning technique or machine learning model does not add "more" —rather, it simply layers another abstract idea on top of the already unpatentable abstract idea. *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570 (W.D. Tex. 2021), *remanded on other grounds, Health Discovery Corp. v. Intel Corp.,* No. 2022-1446, 2022 WL 1681675 (Fed. Cir. May 26, 2022) ("Layering [an iterative training technique]— itself an abstract concept—onto [a machine learning model]…does not raise either concept above the level of an abstract idea.").

In sum, the Patents-in-Suit do not claim anything "more" than the analysis of information by mathematical algorithms, and therefore do not recite a patentable invention.

### 3. The claims simply describe the production of improved data relative to conventional methods.

Finally, Recentive's claimed machine algorithm models simply describe an output—the production of "optimized" data relative to conventional methods by virtue of the fact that the claimed network maps and event schedules are updated in "real time" —that also fails *Alice* step one.

Throughout its opening brief, Recentive repeatedly asserts that it is the creation of "***dynamic***" network maps and schedules that confers eligibility on the Patents-in-Suit. *See, e.g.,* Recentive Brief, at p. 14 ("the patents-in-suit are directed to a specific method of dynamically generating network maps and event schedules using machine learning techniques."); p. 19 ("the claims are directed…to specific methods of improving upon an existing technological process by dynamically generating network maps and event schedules"); p. 27 (discussing "the claims focus on *dynamically* generating network maps and event schedules[,]") (emphasis in original); p. 28 (describing the Patents-in-Suit as "directed to particular methods for dynamically generating network maps and schedules in a manner that improves upon conventional static processes"); p. 37 ("the patents-in-suit are directed to a unique and specific process of dynamically generating maps and schedules"). But this simply reflects the use of generic machine learning techniques, described solely in result-oriented terms, to produce conventional network maps and event schedules that are updated in real time. Taking known prior art network maps and event schedules that existed in static form which admittedly ***could*** be updated or revised manually to reflect new data,[6] and simply reorganizing it into a new form (network maps and event schedules that can be updated in real-time) is an "ineligible abstract

---

[6] *See, e.g.,* Recentive Brief, at p. 4 ("The conventional shortcomings were not for lack of computers, software, or algorithms that could capture and organize voluminous quantities of data very quickly.").

process of gathering and combining data that does not require input from a physical device," and such a process "that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.,* 758 F.3d 1344, 1351 (Fed. Cir. 2014).

Moreover, Recentive argues that the network maps and event schedules generated by its claimed method are "optimal" over the "crude" versions that existed in the prior art. *See, e.g.,* Recentive Brief, at p. 14 ("The prior art processes were static, locked into a single configuration, and relied on crude generalizations."); p. 36 (describing the prior art as "crude and suboptimal generalizations about viewers' preferences within a given region.")). But optimizing existing mathematical techniques likewise does not impart an inventive concept sufficient to render the claims patent eligible. *See Stanford,* 991 F.3d at 1251 ("The different use of a mathematical calculation, even one that yields different or better results, does not render patent eligible subject matter."); *SAP*, 898 F.3d at 1168 ("Here[,] the focus of the claims is not a physical-realm improvement but an improvement in wholly abstract ideas—the selection and mathematical analysis of information, followed by reporting or display of the results."); *RecogniCorp, LLC v. Nintendo Co.,* 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("[A] method whereby a user starts with data, codes that

27

data using 'at least one multiplication operation,' and ends with a new form of data" not patent eligible).

### B. Recentive's cited cases are unavailing.

Recentive relies on several of this Court's past holdings in an effort to save its claims. *See* Recentive Brief, at pp. 32-36. Such reliance is misplaced.

In *Enfish*, this Court upheld claims directed to a "self-referential database," finding it to be a "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Enfish, LLC v. Microsoft Corp.,* 822 F.3d 1327, 1339 (Fed. Cir. 2016). There, the specification explained that the claimed self-referential table "functions differently than conventional database structures," and "that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Not so in the present case. Here we have generic computers using known machine learning techniques and models to collect and analyze routine and conventional data. So, although the end result of Recentive's claimed methods purport to be an "optimal map" that allows for "real time updates," the claims simply reflect machine algorithms doing what machine algorithms do. There is no improvement to computer technologies akin to *Enfish* here.

Similarly, in *Finjan*, this Court determined that the claimed invention was not abstract because it claimed the use of a "behavior-based" virus scan that was able to

identify and compile unique information about potentially hostile operations, while the traditional scan method was limited to recognizing the presence of previously identified viruses. *Finjan, Inc. v. Blue Coat Systems, Inc.,* 879 F.3d 1299, 1304 (Fed. Cir. 2018). Here, unlike in *Finjan*, the claimed machine learning techniques and models reflect the collection of conventional data and analysis of it in conventional ways, simply to produce network maps and live event schedules that can be updated in real-time, "in lieu of the 'static' processes of the prior art." Recentive Brief, at pp. 4-5. That is not an improvement in computer functionality, but rather the use of computers merely as a tool to purportedly produce different or better results.

For this reason, *Koninklijke, Uniloc, SRI* and *McRO* are likewise inapposite. The claims in *Koninklijke* provided a specific, concrete solution for catching previously undetectable systematic errors in data transmission systems "by varying the way check data is generated by modifying the permutation applied to different data blocks." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1146 (Fed. Cir. 2019). In particular, the claims there specifically recited ***how*** to process data (by reordering information via permutation), and ***how*** to use that permutation (*i.e.,* modifying the permutation applied to different data blocks), which this Court found to be a "specific implementation [that] is a key insight to enabling prior art error detection systems to catch previously undetectable systematic errors." *Id.* at 1153. Similarly, the claims that were found patent eligible in *Uniloc* described ***how***

to improve the latency of prior art polling systems by "adding to each inquiry message prior to transmission an additional data field for polling at least one secondary station." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.,* 957 F.3d 1303, 1307-08 (Fed. Cir. 2020).

By contrast here, Recentive is simply claiming the use of machine learning (described in purely functional terms) on generic computer technology functioning in its usual manner, in order to produce "dynamic" network maps and events schedules (*i.e.,* maps and schedules that can be updated in real-time). These are not the kinds of improvements that were found to be patent eligible in *Koninklijke* and *Uniloc.* Rather, Recentive's claims are more like those in *Hawk Tech. Sys.,* which were "recited at such a level of result-oriented generality that those claims amount to a mere implementation of an abstract idea." *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357-58 (Fed. Cir. 2023) (distinguishing *Koninklijke* and noting that the claims at issue failed to "recite a specific solution to make the alleged improvement—conserving bandwidth while preserving quality—concrete[.]") (internal quotation marks and citations omitted).

*SRI* is also distinguishable. *SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295 (Fed. Cir. 2019). In *SRI*, this Court found the challenged claims to be patent eligible because they were "directed to using a specific technique—using a plurality of network monitors that each analyze specific types of data on the network and

integrating reports from the monitors—to solve a technological problem arising in computer networks: identifying hackers or potential intruders into the network." *SRI*, 930 F.3d at 1303. This Court confirmed that the focus of the claims was on the "'specific asserted improvement in computer capabilities'—that is, providing a network defense system that monitors network traffic in real-time to automatically detect large-scale attacks." *Id.* (*quoting Enfish*, 822 F.3d at 1335-36). By doing so, this Court noted, the claims were not directed to using a computer as a tool but "actually prevent[ed] the normal, expected operation of a conventional computer network." *Id.* at 1304. Here, Recentive simply seeks to capture known machine learning techniques and models, running on generic computer hardware, doing what all machine learning algorithms do: collecting data, analyzing it, and presenting the results. This is fundamentally insufficient when compared to the specific technological improvements that were upheld in *SRI*.

And *McRO* is the least apt of all. *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299 (Fed. Cir. 2016). The claims in *McRO* were directed to automatically animating facial expressions for animated characters, and employed "unconventional rules" that replaced subjective, artistic actions performed by humans with specific, objective, and mathematical rules executed by computer. *McRO*, 837 F.3d at 1303, 1313–14. By contrast here, Recentive's claims concern the optimization of networks and event schedules using machine learning to allow for

real-time updates based on underlying changes to user-specified parameters of interest. That is, Recentive is simply claiming to have replaced "computers, software, or algorithms that could capture and organize voluminous quantities of data very quickly" and "humans (even assisted by powerful computers)," (Recentive Brief, at pp. 4, 5) with known machine learning techniques, running on general purpose computers, described in purely functional terms. *See* pages 21-25, *supra*. As the district court pointed out, *McRO* is distinguishable here. *See* Appx21-22; *see also, e.g., FairWarning*, 839 F.3d at 1094 (distinguishing *McRO* on the grounds that there, the traditional process (subjective artistic expression) and newly claimed method (quantitative rules) stood in contrast, whereas the claims at issue "merely implement an old practice in a new environment."); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[O]ur precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").

### C. The Patent Office's guidance is not controlling and is distinguishable.

Recentive suggests that this Court will only decline to follow Patent Office Guidance "to the extent the Office Guidance contradicts or does not fully accord with [this Court's] caselaw." *See* Recentive Brief, at p. 41 (citing *In re Rudy*, 956 F.3d 1379, 1382 (Fed. Cir. 2020)). This is an overly narrow reading of *Rudy*. This

Court made it clear in that case that the Patent Office's Guidance "is not, itself, the law of patent eligibility, does not carry the force of law, and is not binding on our patent eligibility analysis." *Rudy*, 956 F.3d at 1382. "Accordingly, we apply our law and the relevant Supreme Court precedent, not the Office Guidance, when analyzing subject matter eligibility." *Id.* at 1383. Thus, the district court applied the caselaw of this Court and the Supreme Court in reaching its conclusion, regardless of whether or not the Guidance contradicts or is not in accordance with such caselaw. *See also, e.g., In re Abel,* 838 F. App'x 558, 561 (Fed. Cir. 2021) ("We need not further address the Guidance, which does not bind us. We conclude that governing precedent, directly applied, establishes that the claims at issue are directed to abstract ideas.") (internal citations omitted).

But in any event, the district court *did* consider the Guidance, and found there was no conflict between its conclusion and the Guidance. As the district court noted, Example 39 sets out a series of specific steps that describe *how* to train a neural network machine learning method, by expanding the training set using a set of mathematical transformations and minimizing the incidence of false positives. Appx12-13. By contrast, the Machine Learning Training Patents simply claim, "iteratively training the [machine learning model] to identify relationships…wherein such iterative training improves the accuracy of the machine learning model,"—*i.e.*, the claim language is couched in terms of the ***result***, and is entirely silent as to ***how***

the training takes place. The Network Map Patents are even less forthcoming, simply claiming the use of a "machine learning technique."[7] The claims of the Patents-in-Suit have none of the requisite specificity that is evident in the Patent Office's Guidance. Therefore, the district court correctly concluded that "the patents-in-suit are not directly analogous to Example 39," and that therefore the Guidance was irrelevant to the question of patent eligibility. Appx13.

## III.    The claims fail to disclose an inventive concept.

Where, as here, the claims are directed to an abstract idea under step one, the inquiry moves on to whether the elements of the claims recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 218. The claims of the Patents-in-Suit fail this step two.

Recentive here characterizes the alleged inventive concept as the use of "machine learning to dynamically generate optimized maps and schedules based on real-time data and update them based on changing conditions." Recentive Brief, at p. 44. *See also id.* at p. 45 ("The inventive concept in the patents-in-suit is the specific method of applying machine learning, as described in the patents, to

---

[7] Recentive asserted that the claimed "machine learning techniques" of the Network Map Patents, "necessarily includes the 'iterative training' step expressly recited in the Machine Learning Training Patents"; an assertion that Fox accepted as true. *See* Appx560, n.1.

generate optimal network maps and event schedules dynamically, departing from the existing static processes."). Tellingly, Recentive *again* fails to point to anything beyond the application of known machine learning algorithms, running on generic computers, to generate "dynamic" versions of previously static network maps and event schedules that reflect real-time updates in the underlying data.

Recentive raised this argument at the district court, and it was found wanting. *See, e.g.,* Appx24 ("The inventive concept that Recentive identifies is merely the abstract idea – applying machine learning to optimization of network maps and event schedules."); Appx25 ("The machine learning limitations are described only in broad functional terms and provide little guidance on model parameters or training technique[s] … The patents also claim only generic and conventional computing devices, which are insufficient to transform the abstract idea into patent-eligible subject matter. As such, the court is unable to identify any transformative inventive concept present in the patents-in- suit at *Alice* step two.") (internal citations omitted). As the district court noted, that is nothing more than the (unpatentable) abstract idea. *Id. See also, RecogniCorp*, 855 F.3d at 1328 ("A claim directed to an abstract idea does not automatically become eligible merely by adding a mathematical formula… The addition of a mathematical equation that simply changes the data into other forms of data cannot save it*."); PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1319 (Fed. Cir. 2021) ("PersonalWeb's claims merely automate or otherwise

make more efficient traditional methods. Their innovation is an innovation in ineligible subject matter[, which] fails step two.") (internal quotation marks and citations omitted).

Tellingly, Recentive falls back on an argument that "there is at least a factual dispute as to whether the asserted claims contain an inventive concept." Recentive Brief, at p. 43. As discussed below, no such factual disputes are evident in the record, and therefore the district court properly found no "inventive concept" that would confer patent eligibility on the claims.

## IV.    No factual disputes or issues of claim construction precluded the district court's ruling.

### A.    There are no claim construction issues.

Recentive asserts that the district court adopted a claim construction opposite to the one that Recentive purportedly urged. *See* Recentive Brief, at p. 31 ("In effect, the district court decided that the claim language relating to machine learning should be construed as referring to generic techniques, not specialized ones as Recentive had urged."). Not true. As the district court correctly noted, Recentive did not in fact provide ***any*** proposed claim construction or an explanation of why any proposed claim construction would alter the Section 101 analysis. Appx10. Instead, Recentive vaguely suggested that the claimed "machine learning technique" or "trained [machine learning] model" of the Patents-in-Suit either implicitly or explicitly involved an "iteratively training" step. Appx392. Further, Recentive now glosses

over the fact that Fox specifically accepted Recentive's characterization of the scope of these claims as true (*see* Appx560, n. 1) and that its counsel did not address the issue further at the hearing.[8] Nor did Recentive ever seek to introduce any factual or expert testimony on this issue.

In these circumstances, it was proper for the district court to conclude that there were no claim construction disputes that would preclude dismissal at the pleadings stage. *See, e.g., Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 360 (Fed. Cir. 2017) ("[I]t was appropriate for the district court to determine that the [asserted] patents were ineligible under § 101 at the motion to dismiss stage," when the patentee "provided no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis."); *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021) ("WhitServe waived any such argument by failing to request claim construction below, and by failing to explain how a different construction of any claim term would lead to a different result.")

*Trinity* is instructive. In *Trinity*, this Court noted that a patentee "must do more than invoke a generic need for claim construction or discovery to avoid grant of a

---

[8] Instead, Recentive's counsel raised a ***new*** claim construction argument during the hearing. *See* Appx612-613. The district court noted that Recentive had not previously raised this argument, and that Recentive had once more provided no explanation for how it would change the Section 101 analysis. *See* Appx10, n.2.

motion to dismiss under Section 101. Instead, the patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Trinity,* 72 F.4th at 1360-61. This Court found that "[b]ecause Trinity did not identify a proposed claim construction or specific facts to be discovered that would change our analysis," including at oral argument on appeal, it was entirely appropriate to proceed with the subject matter eligibility analysis under Section 101. *Id.* at 1361, n. 4. The same is true here: Recentive has been given multiple opportunities to specifically identify the claim terms and proposed constructions that it believes would change the Section 101 analysis but it has not done so. The district court was correct to proceed with dismissal at the pleadings stage.

**B.    There are no factual disputes.**

Recentive's appeals to so-called "factual disputes" are similarly unavailing. *See* Recentive Brief, at p. 31.In fact, the district court addressed four separate arguments that Recentive raised on this point, and fully dealt with each of them in turn. *See* Appx10-11.

***First***, the district court specifically addressed Recentive's allegation that its claimed machine learning techniques "do not mimic mental processes, but are separate structures or architectures that receive, process, and generate data in a

38

unique manner." Appx10. The district court initially noted that Recentive's assertions here "are the sorts of 'mere conclusory statements' that a Court may disregard at the 12(b)(6) stage." Appx10, citing *Doe v. Princeton Univ.,* 30 F.4th 335, 342 (3d Cir. 2022). But the district court did not stop there. Instead, the district court also noted that even accepting that "machine learning techniques generate data in a manner distinct from the human mind," it is nevertheless true "that machine learning algorithms use known mathematical techniques to do so" – such that the claims of the Patents-in-Suit are nevertheless patent ineligible. Appx10-11. Moreover, the district court "dr[ew] all assumptions in favor of Recentive at this stage", including those related to machine learning having separate structures that process data in a manner different from the human mind, in correctly concluding that the claims were not eligible for patent protection. Appx11. Thus, there were no factual disputes that precluded resolving the Section 101 issue at the pleading stage.

***Second***, the district court specifically examined Recentive's claim that the "iteratively training" step of the Patents-in-Suit reflects a specialized, and not generic, technique. The district court rightly found that there was no dispute on this point that would preclude a subject matter eligibility analysis, because iterative training can itself be a generic part of the generic technique of machine learning. *See* Appx11. In other words, "repeating some steps" is not inventive. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348-49 (Fed.

Cir. 2014). Moreover, to the extent that Recentive believed that claim construction on this limitation was required, it was incumbent upon Recentive to specifically identify the proposed construction and explain how that would alter the Section 101 analysis. It failed to do so.

***Third***, the district court ***accepted*** Recentive's factual allegations that its claimed machine learning techniques produce "a better result than what a human could perform alone," and a "better and more optimized event schedule than what a human could achieve without the claimed techniques." Appx11. The district court found that, even accepting these allegations as true, they did not change the court's analysis. *Id.* Recentive does not appear to take issue with this conclusion.

***Fourth***, the district court specifically addressed Recentive's suggestion that humans process data qualitatively rather than quantitatively and thereby its claimed machine learning techniques optimize maps and schedules in a way that human brains could not. *See* Appx18. Recentive complains that the district court "waved away" this proposition and "incorrectly dismissed this as *ad hoc* attorney argument." *See* Recentive Brief, at p. 31 (citations omitted). But the record demonstrates that Fox repeatedly accepted this characterization, and thus there was actually ***no*** dispute on this point. *See, e.g.,* Appx564 (noting that although there was no allegation in the first amended complaint that humans process data qualitatively rather than quantitatively, "***even accepting all of [this] as true***, it still does not make the Patents-

40

in-Suit patent eligible.") (emphasis added); Appx566 ("[I]f Recentive's other assertions are accepted as true—*i.e.* the claimed steps of the Patents-in-Suit could not in fact be performed in the human mind—then that would actually underscore the risk of preemption evident in this case."); Appx620-621 (discussing the absence of factual disputes). Moreover, the district court noted that whether or not a machine learning algorithm processes information differently from a human is "irrelevant." Appx18. As the court recognized, the correct question is whether the machine learning processes are algorithmic in nature – and they undisputedly are. *See id.* (*quoting Elec Power Grp.,* 830 F.3d at 1354 ("[Courts] have treated analyzing information by steps people go through in their minds, *or by mathematical algorithms*, without more, as essentially mental processes within the abstract-idea category.") (emphasis added by district court).

Having thus fully dealt with each of Recentive's attorney arguments, the district court concluded that there were no factual disputes that needed to be resolved prior to undertaking the patent eligibility analysis. As this Court has previously held, "the district court need not accept a patent owner's conclusory allegations of inventiveness," and only "plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.,* 50 F.4th 1371, 1379 (Fed. Cir. 2022) ("*IBM I*"). In *IBM I*, this Court confirmed that the patent owner had failed to make plausible and specific factual allegations

where the cited limitations simply used "functional language, at a high level of generality and divorced from any computer technology, to recite the claimed functions," and "simply describe[d] the abstract method without providing more." *Id.* This Court noted that even if the claims did require the use of a computer, "claims to an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way do not suffice at step two." *Id.* (internal quotation marks and citations omitted). The same is true here. Recentive unequivocally asserts that the "[t]he inventive concept in the patents-in-suit is the specific method of applying machine learning, as described in the patents, to generate optimal network maps and event schedules dynamically, departing from the existing static processes." Recentive Brief, at p. 45. But accepting that as true, this is nothing more than the simply the abstract idea of generating network maps and event schedules, and automatically updating them, using real-time data—and the fact that this is done using claimed machine learning techniques and models (described only in purely functional terms) running on generic computer technologies does nothing to add any inventive concept. The district court properly dismissed Recentive's complaint.

## V.    The district court correctly denied leave to amend on the ground that any further amendments would be futile.

Recentive's plea for leave to amend was properly rejected. At the district court level, Recentive simply argued that, "[t]o the extent the Court grants Fox's Motion,

Recentive requests leave to plead additional facts to address any shortcomings identified by the Court." Appx403. That was accompanied by a footnote that observed that "some patent holders attach expert declarations…to patent infringement complaints." *Id.* at n.10. Tellingly, Recentive did not actually offer to attach an expert declaration to a second amended complaint, nor did it tell the court what the declaration would address. Moreover, when Recentive previously availed itself of the opportunity to file its first amended complaint, it elected ***not*** to file an expert declaration. Instead, it simply added a host of factual allegations and attached the Patents-in-Suit. The district court accepted all of those factual allegations as true. Appx11 ("The court accepts Recentive's factual allegations as true at this stage but ultimately finds they do not change the analysis.") And the district court reviewed the Patents-in-Suit when deciding the motion. Appx26 ("[T]he court reviewed the patents-in-suit when deciding Fox's Motion. The claims of the patents say what they say."). Having done so, the court appropriately determined that any further amendments would be futile and accordingly denied Recentive's request for leave to amend. This Court has previously confirmed the correctness of the district court's approach, and should do so again here. *See, e.g., Fast 101,* 834 F. App'x at 594 (affirming district court's denial of leave to amend where the patent owner had "not identified with specificity any additional factual allegations or claim constructions that would render amendment and discovery ***not futile***.") (emphasis added).

43

Fox notes that, in affirming a district court denial of leave to amend based on futility, this Court has previously applied an abuse of discretion standard of review under Third Circuit law. *Fast 101*, 834 F. App'x at 593. Recentive correctly notes that the Third Circuit has, on other occasions, applied a *de novo* standard in reviewing denial of leave to amend based on futility. Recentive Brief, at p. 20 (citing *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.,* 823 F.3d 184, 189 (3d Cir. 2016)). However, a review of the district court's decision even under the *de novo* standard nevertheless confirms the correctness of the approach that the court adopted. Recentive amended its complaint once, and it did so knowing that Fox had already once challenged the subject matter eligibility of at least its Network Map Patents. *See* Appx181. Recentive could have used that opportunity to attach an expert declaration or other additional material in support of the eligibility of its claims. It chose not to do so: instead, Recentive added a host of factual allegations and simply attached the Patents-in-Suit. The district court specifically considered and adopted those factual assertions as true (*see* Appx10-11 ("[T]he court draws all assumptions in favor of Recentive at this stage…The court accepts Recentive's factual allegations as true at this stage but ultimately finds they do not change the analysis,") and considered the Patents-in-Suit. *See, e.g.,* Appx25 ("Here, Recentive attached to its FAC the patents-in-suit…The claims of the patents say what they

44

say."). Thus, even on a *de novo* review, it is clear that the district court reached the correct conclusion in determining that any further amendments would be futile.

## CONCLUSION

In light of the foregoing, this Court should affirm the district court's dismissal under Fed. R. Civ. P. 12(b)(6) with prejudice.

Dated: February 23, 2024              Respectfully submitted,

*/s/ Ranjini Acharya*
Ranjini Acharya
Michael Zeliger
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2550 Hanover Street
Palo Alto, CA 94304-1115
Tel:  650.233.4500

Evan Finkel
Michael Horikawa
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Tel:  213.488.7100

*Counsel for Fox Corporation, Fox Broadcasting Company, LLC, and Fox Sports Productions, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this February 23, 2024, I caused the foregoing

**APPELLEES' PRINCIPAL BRIEF** to be filed with the Clerk of the Court using

the CM/ECF system. Counsel for appellant was electronically served by and through

the Court's CM/ECF filing system.

Dated: February 23, 2024          By: */s/ Ranjini Acharya*
                                      Ranjini Acharya

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief uses a proportionately spaced 14 point typeface, and, based on the word count function of Microsoft Word, contains 10,435 words, excluding the items listed in Fed. R. Appellate P. 32(f) and Federal Circuit Rule 32(b)(2), and therefore complies with the length restrictions of Federal Circuit Rule 32(b)(1).

Dated: February 23, 2024             By: */s/ Ranjini Acharya*
                                         Ranjini Acharya