No. 23-2437

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

RECENTIVE ANALYTICS, INC.,

*Plaintiff-Appellant,*

v.

FOX CORPORATION; FOX BROADCASTING COMPANY, LLC; AND FOX SPORTS
PRODUCTIONS, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court for the District of Delaware
The Honorable Gregory B. Williams, Case No. 1:22-cv-01545-GBW

## APPELLANT'S REPLY BRIEF

Alexandra D. Valenti
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8800
Fax.: 212.202.4038

Robert Frederickson III
David J. Zimmer
Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
Tel.: 617.570.1000
Fax.: 617.523.1231

March 22, 2024

*Counsel for Plaintiff-Appellant
Recentive Analytics, Inc.*

# CERTIFICATE OF INTEREST

Undersigned counsel for Plaintiff-Appellant certifies as follows:

**1.    The full name of every entity represented by undersigned counsel is:**

Recentive Analytics, Inc.

**2.    The name of the real party in interest for the entities is:**

N/A

**3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the entities are:**

N/A

**4.    The names of all law firms and the partners or associates that appeared for the entities in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance) are:**

Shaw Keller LLP; John W. Shaw; Alison Siedor; Jenevieve N. Nutovits;

Karen Elizabeth Keller; Nathan Roger Hoeschen

**5.    The title and number of any case known to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:**

None

**6.    Organizational victims and bankruptcy cases:**

None

/s/ *David J. Zimmer*
David J. Zimmer

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

ARGUMENT ..................................................................... 5

I.    The asserted claims are analogous to claims this Court has upheld because they are directed to improving the functionality of a technological process. ....................................................................5

    A.    The asserted claims recite methods for improving the software's functionality by allowing it to detect previously undetectable patterns and to dynamically generate maps and schedules.................................6

    B.    Fox cannot distinguish this Court's technological-improvement precedents. ....................................................................9

    C.    This Court's data-manipulation precedents are inapt. ........................15

    D.    The guidance from the Manual of Patent Examining Procedures is persuasive. ......................................................................21

II.   Recentive's claims and well-pleaded complaint sufficiently allege an inventive concept under *Alice* step two. .......................................22

III.  The district court inappropriately resolved disputed questions of fact and claim construction..........................................................27

IV.   The district court should have granted leave to amend. ...............................28

CONCLUSION ..................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
　882 F.3d 1121 (Fed. Cir. 2018) ..................................................22, 28

*Adasa Inc. v. Avery Dennison Corp.*,
　55 F.4th 900 (Fed. Cir. 2022) ............................................................5

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
　967 F.3d 1285 (Fed. Cir. 2020) ..................................................11, 12

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
　827 F.3d 1341 (Fed. Cir. 2016) ..........................................23, 24, 25

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
　927 F.3d 1306 (Fed. Cir. 2019) ..........................................22, 26, 28

*Cooperative Ent., Inc. v. Kollective Tech., Inc.*,
　50 F.4th 127 (Fed. Cir. 2022) ..........................................................15

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
　758 F.3d 1344 (Fed. Cir. 2014) ..................................................20, 21

*Electric Power Group, LLC v. Alstom S.A.*,
　830 F.3d 1350 (Fed. Cir. 2016) ..........................................16, 17, 18

*Enfish, LLC v. Microsoft Corp.*,
　822 F.3d 1327 (Fed. Cir. 2016) ........................ 3, 4, 7, 8, 9, 10, 15, 18

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
　879 F.3d 1299 (Fed. Cir. 2018) ..................................................7, 8, 10

*Haberle v. Troxell*,
　885 F.3d 170 (3d Cir. 2018) ............................................................29

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
　50 F.4th 1371 (Fed. Cir. 2022) ........................................................26

*Estate of Lagano v. Bergen Cty. Prosecutor's Off.*,
　769 F.3d 850 (3d Cir. 2014) ............................................................29

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019) ....................................................................8, 16

*TecSec, Inc. v. Adobe Inc.*,
   978 F.3d 1278 (Fed. Cir. 2020) .........................................................................17

*Thales Visionix Inc. v. United States*,
   850 F.3d 1343 (Fed. Cir. 2017) .........................................................................15

*Trinity Info Media, LLC v. Covalent, Inc.*,
   72 F.4th 1355 (Fed. Cir. 2023) .............................................................16, 18, 19

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020) .............................................................5, 14, 15

*Weisner v. Google LLC*,
   51 F.4th 1073 (Fed. Cir. 2022) ....................................................................10, 28

## Other Authorities

United States Patent and Trademark Office, Manual of Patent
   Examining Procedure....................................................................................21, 22

Federal Rule of Civil Procedure 12(b)(6) ...............................................4, 22, 23, 28

# GLOSSARY

| | |
|---|---|
| '367 patent | U.S. Patent No. 11,386,367 |
| '960 patent | U.S. Patent No. 11,537,960 |
| '811 patent | U.S. Patent No. 10,911,811 |
| '957 patent | U.S. Patent No. 10,958,957 |
| Machine Learning Training Patents | The '367 patent and '960 patent, collectively |
| MPEP | United States Patent and Trademark Office's Manual of Patent Examining Procedure |
| Network Map Patents | The '811 patent and '957 patent, collectively |
| Recentive | Recentive Analytics, Inc. |
| Fox | Fox Corporation, Fox Broadcasting Company, LLC, and Fox Sports Productions, LLC, collectively |
| NFL | National Football League |
| ML | Machine learning |

## INTRODUCTION

Fox's broadcast business depends on optimizing network maps and event schedules. Fox has long had access to Recentive's maps through their joint work with the NFL, and Fox therefore knows that Recentive's groundbreaking work revolutionized the optimization of such maps and schedules—that is why Fox blatantly copied Recentive's work when it could not achieve the same results on its own. In this case, Fox seeks to avoid liability for free-riding on Recentive's patented inventions by falsely asserting that Recentive's inventions claim nothing more than using a computer to carry out known network-mapping and event-scheduling techniques. Nothing could be further from the truth. Recentive's inventions are not abstract, but represent a technological transformation of the static and crude prior-art methods for generating network maps and event schedules. And the claims at issue are directed to specific methods for using specific machine learning techniques in specific ways. Fox's attempt to invalidate these patents oversimplifies the claims, ignores the well-pleaded allegations in the complaint, and conflicts with this Court's precedent. This Court should reverse the district court and reject Fox's effort to use Section 101 to profit from Recentive's innovations without any compensation.

The claims at issue are classic examples of software-based technological improvements akin to those this Court has held to be directed to patent-eligible subject matter, not an abstract idea. They are drawn to overcoming technological

shortcomings in the existing software for generating network maps and event schedules. The prior-art methods were based on crude generalizations about viewer preferences—little more than quasi-informed guesswork. Recentive approached the problem in an entirely new way: Abandoning the conventional technique of resorting to crude generalizations about the public's preferences, Recentive's method systematically hunts for "useful patterns" buried in the mass of data that supply far more accurate forecasts of highly-nuanced and evolving human behavior. And Recentive worked out how to make the algorithms function dynamically, so the maps and schedules are automatically customizable and updated with real-time data.

The claims recite, with specificity, *how* to achieve these results. The key to uncovering the hitherto-undetectable useful patterns is collecting the particular sets of data recited in the claims and "iteratively training" the specified kinds of machine learning models "to identify relationships between" the disparate data inputs relevant to generating maps and schedules. Similarly, the claims recite how to use the trained machine learning models to dynamically update the maps and schedules. In the conventional processes for generating network maps and event schedules, there was no method for iteratively training a machine learning model to optimize results. Recentive invented specific methods of doing just that, and the claims recite how to carry out those novel processes.

That is particularly true of the Machine Learning Training Patents, which are

directed to a *specific* method for iteratively training *specific* machine learning models identified in the claims. They require specific machine learning models (either a "neural network" or "support vector" model); identify how to "iteratively train[]" the model to "identify relationships between different event parameters and the one or more event target features"; require "user-specified event parameters" and "weights" that are used, in combination with the trained model, to optimize an event schedule; and then update that schedule dynamically in view of "real-time" changes. *See* Appx150 at 14:2-45; Appx169 at 14:12-60. As Fox acknowledges in its background section (at 9-10), the PTO examiner allowed the relevant claims of the Machine Learning Training Patents over a Section 101 objection precisely because of these specific and detailed limitations. Yet Fox completely ignores these crucial claim limitations in the argument section of its brief. Fox's inability to engage *at all* with what Fox acknowledges was the basis of the examiner's decision to allow these claims should alone be fatal to its argument.

Ignoring the differences between the two different sets of patents, Fox blithely asserts that *all* of "Recentive's claims simply reflect the collection and analysis of information." Fox Br. 19. In this way, like the district court, Fox zooms out to "such a high level of abstraction" that obscures the invention's advance over the prior art, including the highly specific limitations in the Machine Learning Training Patents on which the examiner relied in issuing the patents. *Enfish, LLC v. Microsoft Corp.*,

822 F.3d 1327, 1337 (Fed. Cir. 2016). That is not how the eligibility analysis under Section 101 works. Almost anything done on a computer can be characterized as, to use Fox's framing, just "the collection and analysis of information." That thirty-thousand-foot thinking would erase a dozen of this Court's precedents and, in the bargain, "all but ensure[] that the exceptions to § 101 swallow the rule." *Id.*

In addition, Recentive's claims plainly contain an inventive concept that satisfies the second *Alice* step at the pleading stage. The complaint unambiguously alleges an inventive concept that was neither routine nor conventional. *E.g.*, Appx42-44. This Court's precedents teach that, because *Alice* step two is a factual inquiry, these plausible allegations are decisive at the pleading stage and successfully defeat a Rule 12(b)(6) motion under Section 101. Fox effectively ignores this argument; it merely asserts, with little reasoning, that the complaint's allegations are conclusory. But they are not conclusory. And that would be reason to dismiss with leave to amend—not dismiss with prejudice, as the district court did.

That leads to the district court's final error: denying leave to amend on futility grounds. Neither Fox nor the district court explains why Recentive could not amend its complaint to plausibly allege an inventive concept, if that were necessary. The most Fox can say is that Recentive had the opportunity to attach an expert declaration to its first amended complaint but did not do so. But this Court has repeatedly held that well-pleaded allegations stand on their own to defeat a motion to dismiss at *Alice*

step two; this Court has *never* required a declaration attached to a complaint. The district court should, at a minimum, have granted leave to amend.

The result of the district court's decision, if affirmed, would be to allow Fox to copy and profit freely off of Recentive's hard work, which led to a specific and groundbreaking implementation of machine learning to the field of network maps and event scheduling. Nothing in this Court's precedent supports that result, and this Court should reverse.

## ARGUMENT

I. **The asserted claims are analogous to claims this Court has upheld because they are directed to improving the functionality of a technological process.**

This Court has "routinely held software claims patent eligible under *Alice* step one when they are directed to improvements to the functionality of a computer or network platform." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307 (Fed. Cir. 2020) (collecting cases). "If the focus of the claim is a specific and concrete technological advance, for example an improvement to a technological process," then the "inquiry ends and the claim is eligible." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022). Recentive's core argument is grounded in this line of cases, where the claims are directed to improvements to software or other technological processes. *See* Opening Br. 15-16, 36.

Everyone agrees that the prior art processes for generating network maps and

event schedules relied on computer-based technology. *See* Fox Br. 23 (agreeing that "computers, software, and software algorithms already existed in the prior art"); Opening Br. 4. Recentive's claims are patentable because they are directed to improving the functionality of those technological processes. As Recentive argued (at 22-26, 36-40), the asserted claims are directed to improving the functionality of the prior art software in two specific (and complementary) ways: (1) replacing the "crude generalizations" of the prior art with algorithms trained to identify far more nuanced relationships and patterns among the relevant data that were previously undetectable; and (2) generating the maps and schedules dynamically, which allows the software to make use of real-time data.

The claims are directed to specific ways to achieve those advances. While that is true for both sets of patents, it is especially clear for the claims of the Machine Learning Training Patents, which the examiner approved precisely because they identify specific machine learning models and claim a specific method for iteratively training those specific models as a way to achieve the claimed technological advances. Appx512; Appx531; Appx546-548.

### A. The asserted claims recite methods for improving the software's functionality by allowing it to detect previously undetectable patterns and to dynamically generate maps and schedules.

As the claims and the complaint make clear, and as Recentive detailed in its Opening Brief (at 4-6), two central shortcoming of the prior art processes were (1)

that they relied on "crude and suboptimal generalizations about viewers' preferences within a given region," Appx43-44 (¶23); and (2) they were "static and incapable of responding to changing conditions," Appx116 ('811 patent) at 1:23-29; Appx128 ('957 patent) at 1:31-36. These deficiencies were due to technical limitations with the prior art computer systems, which Recentive overcame by approaching the problem in a new way: Instead of continuing to use the conventional techniques of quasi-informed guesswork combined with static software, Recentive figured out how to train the algorithms to identify "useful patterns" lurking within the relevant data sets and then use those algorithms to generate optimal maps and schedules that function dynamically, capable of automatically updating in real time. *See* Opening Br. 4-6.

This is a well-traveled path among this Court's software-improvement cases at *Alice*'s first step: solving a technological problem by approaching it "in a new way," *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018), or developing a method that "functions differently than conventional" techniques, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016); *see* Opening Br. 33-36 (discussing this case law).

This Court's cases teach that one classic example of a technological improvement is a method that allows the software to detect something that was hitherto undetectable. In *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, this Court

held that claims were directed to patent-eligible subject matter when they recited a specific solution for "catching previously undetectable" data problems. 942 F.3d 1143, 1151 (Fed. Cir. 2019). In *Finjan*, a claim that passed *Alice* step one was directed to employing "a new kind of file that enables a computer security system to do things it could not do before," such as finding viruses that were able "to avoid detection" under the prior art software and "accumulat[ing] and utiliz[ing] *newly available*" information. 879 F.3d at 1305 (emphasis added). And in *Packet Intelligence LLC v. NetScout Systems, Inc.*, the claims satisfied *Alice* step one because "the claimed invention presented a technological solution to a technological problem"—specifically, that "known network monitors were unable to identify disjointed connection flows to each other, and the focus of the claims is a specific improvement in computer technology: a more granular, nuanced, and useful classification of network traffic." 965 F.3d 1299, 1309-10 (Fed. Cir. 2020).

The second technological improvement to which the claims are drawn—a new dynamic functionality enabling automatic updates with real-time data—is also a fixture of this Court's precedents. In *SRI*, for instance, the claims were directed to the technological improvement of "providing a network defense system that monitors network traffic *in real-time* to *automatically* detect large-scale attacks." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1304 (Fed. Cir. 2019) (emphases added). Similarly, the invention in *Enfish* allowed for "more flexibility in

8

configuring the database," which could now be "configured on-the-fly." 822 F.3d at 1333. Replacing the static processes of the prior art with dynamically generated maps and schedules is a technological improvement in this vein.

These cases illustrate that the software improvements to which Recentive's claims are directed are precisely the kinds that this Court has treated as non-abstract. Fox, like the district court, overlooks that these technological improvements are "the focus of the claimed advance over the prior art." *Enfish*, 822 F.3d at 1335 (citation omitted). The claimed advance is not, as Fox suggests (*e.g.*, at 21), simply generating network maps on "generic computer hardware." Nor do the claims merely recite a computer performing a conventional function "automatically." Rather, the claimed invention brings to bear a particular technical solution to achieve automatic, real-time updates: machine learning models that have been iteratively trained with specified data to identify hidden patterns imperceivable to humans.

### B. Fox cannot distinguish this Court's technological-improvement precedents.

Fox does not dispute that this Court's precedents have repeatedly held that claims directed to such technological improvements are eligible under Section 101. Instead, Fox argues that Recentive's claims are "recited at such a level of result-oriented generality that those claims amount to a mere implementation of an abstract idea." Fox Br. 30 (quoting *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357-58 (Fed. Cir. 2023)). The gist of Fox's brief is that "the claimed machine

learning techniques and models are couched in purely results-oriented language, without any explanation of ***how*** the claimed machine learning technique/model carries out the steps – other than machine learning algorithms doing what machine learning algorithms do." *Id.* at 24 (emphasis in original). Tellingly, Fox does not distinguish between the Machine Learning Training Patents and the Network Map Patents, even though the patents differ in key ways. *See, e.g.*, *Weisner v. Google LLC*, 51 F.4th 1073, 1084 (Fed. Cir. 2022) ("At step one, the district court erred by failing to separately analyze these patents.").[1]

Fox's arguments do not withstand scrutiny. Recentive's "claims recite more than a mere result" because "they recite *specific steps* … that accomplish the desired result." *Finjan*, 879 F.3d at 1305 (emphasis added). The desired results are optimized network maps and event schedules. The claims detail concrete methods for achieving those results in ways that are both different and better than the prior art. Eschewing the prior art's reliance on "crude and suboptimal generalizations," Appx43-44 (¶23), Recentive's methods unearth "useful patterns" that had previously been buried in the data, unrecognizable to humans. Appx42-43 (¶22). The claims

---

[1] Contrary to the district court, Appx16, Recentive has repeatedly relied on features specific to each set of patents, including the Machine Learning Training Patents. *E.g.*, Appx389-390; Appx391-392; Appx598-601; *see also* Opening Br. 22-26. Fox and the district court's insistence on treating the patents-in-suit as if they were the same is a symptom of their broader error in approaching the claims "at such a high level of abstraction" that "all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

explicitly recite how to achieve this: by following the precise steps laid out in the claims, including "iteratively training the ML model to identify relationships" among the specified types of data, and then using those relationships and models to dynamically generate more accurate maps and schedules. Appx150 at 14:21-26; Appx169 at 14:28-33; *see* Opening Br. 7-11.[2]

Fox's objection (at 24) that this is merely "what machine learning algorithms do" misses the mark. Recentive lays no claim to inventing machine learning. What Recentive did invent, though, are new and concrete methods for putting machine learning to a particular use in a particular way to "solve[] a problem in an existing technological process"—*i.e.*, the existing process of generating network maps and event schedules. *Koninklijke*, 942 F.3d at 1150. The claims recite step-by-step processes for doing so. In other words, the claims "identify 'how' th[e] functional result is achieved by limiting the claim scope … to concrete action." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020). That satisfies *Alice* step one.

This is particularly true for the Machine Learning Training Patents. As Fox acknowledges (at 9-10), the examiner allowed the relevant claims of the Machine Learning Training Patents specifically because Recentive added detailed limitations

---

[2] Although the language regarding "iteratively training the ML model to identify relationships" appears only in the Machine Learning Training Patents, Fox concedes that the Network Map Patents also include that step. *See* Fox Br. 34 n.7, 36-37.

focused on iteratively training two particular machine learning models in specific ways. Appx150 at 14:2-49; see Appx169 at 14:12-60. These claims require "providing the one or more event parameters and the one or more event target features to a machine learning (ML) model, wherein the ML model is at least one of a neural network ML model and a support vector ML model," and then "iteratively training the ML model to identify relationships between the one or more event parameters and the one or more event target features using historical data corresponding to one or more previous series of live events, wherein such iterative training improves the accuracy of the ML model." *Id.* They then further require a specific method for using that trained model, involving "user-specified event parameters" and "weights" that are used to generate and update the schedule in "real[ ]time." *Id.*

Despite acknowledging that the Machine Learning Training Patents' claims were allowed because of this exact specificity, Fox completely ignores these features of the Machine Learning Training Patents in its Section 101 analysis and instead seeks to attack both sets of patents *together* by incorrectly characterizing them as reciting a merely a result. *E.g.*, Fox Br. 24. As the examiner correctly recognized, however, there is no way to view the above claim language as directed to a mere result: It claims the use of specific machine learning models, iteratively trained and applied in a specified way. Appx546-548.

Fox is also wrong to suggest that the asserted claims preempt *all* use of machine learning in generating network maps and event schedules. Machine learning is an extraordinarily versatile technology that can be put to countless uses. Conceivably, machine learning techniques could improve network mapping and event scheduling in a host of ways *other* than by copying the methods recited in the asserted claims. That is particularly true for purposes of the Machine Learning Training Patents. Indeed, in the prosecution of the Machine Learning Training Patents, the examiner noted that there were already some examples of machine learning techniques disclosed in the prior art of generating schedules. For instance, one patent "discloses obtaining a list of films and film information for a film festival and applying machine learning or artificial intelligence techniques to automatically schedule films for a film festival." Appx373. Yet the examiner concluded that this patent does not "explicitly teach training the machine learning model and fails to teach the particular machine learning algorithms referenced in [Recentive's] claims." *Id.* The asserted claims recite specific processes for achieving the desired advance in mapping and scheduling technology. They do not merely invoke "machine learning algorithms doing what machine learning algorithms do." *Contra* Fox Br. 24.

Fox also argues that the claims cannot be directed to any technological improvement because they rely on "known machine learning techniques and models

to collect and analyze routine and conventional data."  Opening Br. 28; *see also id.* at 26.   This argument is doubly incorrect.

First, there is no basis in the record to support the assertion that the recited machine learning techniques are "known" or "generic."  *See* Opening Br. 30-31.  As Recentive argued in its Opening Brief, the district court inappropriately resolved these questions of fact and claim construction against Recentive at the motion to dismiss stage.  *See id.*

Second, and more fundamentally, Recentive's claimed technological advance is to the processes for network mapping and event scheduling—not in the field of machine learning more generally.  Even if the claimed machine learning techniques and models were "generic," Recentive has worked out *specific* and novel methods of putting those methods to use in solving technological problems in the existing map- and schedule-generating processes—dynamically updating network maps by iteratively training and then using machine learning models to recognize data patterns that humans could not identify.   Again, this is particularly true of the Machine Learning Training Patents, which claim iteratively training specifically identified machine learning models using specifically identified data and applying those trained models in specific ways.  In that sense, the claims are analogous to those in *Uniloc*, where simply adding an "additional data field" in a communication system was "directed to a patent-eligible improvement to computer functionality"—

14

even though the prior art already used data fields, and the invention simply added another one.  *Uniloc USA, Inc.*, 957 F.3d at 1307-08.

Fox also argues that Recentive's inventions are unpatentable because they run on "generic computer hardware"—which, Fox contends, "are precisely the sorts of claims that *Alice* definitively prohibits."  Fox Br. 21.  That blatantly misstates the law.  This Court has squarely and repeatedly held that "claims directed to a new and useful technique … that runs on *general-purpose computer equipment* are patent eligible."  *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (emphasis added); *see Cooperative Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 135 (Fed. Cir. 2022) (same); *Enfish*, 822 F.3d at 1338 (same).  The question is not whether the claims *use* generic computer hardware *in any way*; the question is whether the "the focus of the claimed advance over the prior art" is merely the use of that hardware as opposed to improvements in existing technological processes.  *Enfish*, 822 F.3d at 1335.  For the reasons discussed above, Recentive's claims plainly fall in the latter category.

### C.    This Court's data-manipulation precedents are inapt.

Doubling down on the district court's misstep, Fox argues that this Court's "data manipulation" precedents, *Koninklijke*, 942 F.3d at 1152, are decisive for the *Alice* step one inquiry here.  Fox Br. 17-27.  But this is simply the flip side of Fox's unpersuasive attempt to distinguish the software-improvement precedents.  The

data-manipulation cases are not on point for the same reason that the software-improvement cases are.

As *Koninklijke* explained, the claims in this Court's line of "data manipulation" cases stumbled at *Alice* step one for a simple reason: "Absent sufficient recitation of *how* the purported invention improved the functionality of a computer, the 'improvement' captured by those claims was recited at such a level of result-oriented generality that those claims amounted to a mere implementation of an abstract idea on a computer, not the specific way to improve the functionality of a computer." 942 F.3d at 1152; *see* Opening Br. 37-38. As just explained, however, the asserted claims here adequately recite the "how" of the technological improvement. *See* pp. 11-12, *supra*. Accordingly, the "data manipulation" cases offer little instruction here.

Consider the central cases Fox cites (at 18-20): *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) and *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355 (Fed. Cir. 2023). In both of those cases, the basic problem with the claims was that they were not directed to a technological improvement at all. As this Court has explained, "[t]he *Electric Power* claims were drawn to using computers as tools to solve a power grid problem, rather than improving the functionality of computers and computer networks themselves." *SRI*, 930 F.3d at 1304. The *Electric Power* Court recognized that the claims were

"arguably an advance over conventional computer and network technology," but they fell short because they were not "limit[ed] … to technical means for performing the functions" representing the technical advance.  830 F.3d at 1351.  Instead, the claims focused on "defining a desirable information-based *result*" but were "not limited to inventive means of achieving the result."  *Id.*; *see also Koninklijke*, 942 F.3d at 1152 (explaining that, in *Electric Power*, the claims were not "limited to a specific improvement in computer functionality" and "the claims failed to recite a specific enough solution to make the asserted technological improvement concrete").  Recentive's claims, in contrast, are limited to the specific technical means and method recited, which explains *how* to achieve the desired improvement.

Fox ignores all this and, instead, reads *Electric Power* as standing for the proposition that Recentive's claims cannot be eligible because they "simply reflect the collection and analysis of information."  Fox Br. 19.  That is not what *Electric Power* held, nor is that how this Court has since read that decision.  Claims directed to improving the technological process of collecting and analyzing information on a computer undoubtedly satisfy *Alice* step one.  All of this Court's many software-improvement cases attest to that.  *See* pp. 9-11, *supra*; Opening Br. 32-26; *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) (collecting cases).  Indeed, at a high level of generality, *virtually everything* done with a computer can be characterized as "the collection and analysis of information."  That is precisely why

this Court has cautioned that claims must not be characterized "at such a high level of abstraction" that "all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

*Trinity* also does not help Fox. In that case, just as in *Electric Power*, the focus of the claims was not on technological improvement at all. The Court explained that "[t]he specifications frame the inventor's problem in terms of how to improve existing polling systems by performing progressive polling, not how to improve computer technology." 72 F.4th at 1463. And "the patents confirm they do not limit the invention to specific technological solutions." *Id.*; *see id.* ("[T]he problem facing the inventor was how to perform the abstract idea of matching based on questioning, not an improvement to computer technology."). The asserted claims here, however, are directed to specific technological solutions to a technological problem: solving the twin problems of reliance on static algorithms and crude generalizations by implementing the *specific recited methods* for training the algorithms to recognize hidden relationships in the data and using those trained algorithms to generate the maps and schedules dynamically. *See* pp. 6-9, 11-12, *supra*; Opening Br. 7-11, 22-26. And they do so in specific ways, including, in the case of the Machine Learning Training Patents, specific ways of iteratively training specifically identified machine learning models.

Contrary to Fox's brief, Recentive does not dispute that *Trinity* held that

"claims can be directed to an abstract idea even if the claims … require operations that a human could not perform as quickly as a computer." *Id.* at 1364. To repeat, Recentive's claims are patentable because they are directed to specifically improving the existing technological processes of network mapping and event scheduling—*not* because Recentive's algorithms work faster than the human mind. *See* Opening Br. 21-26, 32-36. *Trinity* has nothing to say about Recentive's primary argument.[3]

Seeking to dispel Recentive's argument that the asserted claims' focus on "dynamically" generating maps and schedules is a technological improvement, Fox argues that the claims recite taking static maps and schedules "and simply reorganizing [them] into a new form." Fox Br. 26. This, Fox says, is not patent eligible because it is only "a process 'that employs mathematical algorithms to manipulate existing information to generate additional information.'" *Id.* at 27 (quoting *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014)). But, as discussed above, Recentive's technological solution is not simply reorganizing existing information. Recentive's methods approach the problems of map and schedule generation in a new way and allow the software to do what it could not do before: developing ways of training the algorithms to update

---

[3] As Recentive noted, the technological improvement is "underscore[d]" by the qualitative difference between machine learning techniques and human mental processes. Opening Br. 39-40 (citing *SRI*, 930 F.3d at 1304). Fox accepts that the machine learning techniques recited in the claims are qualitatively different than human mental processes. Fox Br. 40.

automatically with real-time data and to identify useful relationships among the relevant data sets that improve the accuracy of the final product. And, in the context of the Machine Learning Training Patents, the claims do so using specific methods of iteratively training specific machine learning models identified in the claims. These are concrete technological advances.

*Digitech* is of no help to Fox. The flaw this Court identified in *Digitech* was that the purported technological advance was entirely absent from the claims themselves. *See Koninklijke*, 942 F.3d at 1152 (distinguishing *Digitech* because there the "asserted improvement in image processing was not specifically captured in the claims" and therefore "the claims were too abstract to capture the inventors' purported technical contribution"). But the language of Recentive's claims specifically recite the technological improvements to the prior art processes for generating maps and schedules, including "using a machine learning technique," "iteratively training the ML model to identify relationships" among the particular data sets described in the claims and the dynamic functionality of "automatically updating the network map on demand and in real time." *See* Opening Br. 7-11; p. 11 n. 2, *supra* (noting that the parties agree that the "iteratively training" step recited in the Machine Language Training Patents is necessarily incorporated into the Network Map Patents' claim language). That is more than enough to identify the technological improvement in the claims. But the Machine Learning Training

Patents go even further, identifying the specific data parameters used to train the model—*e.g.*, "venue availability, venue locations, proposed ticket prices, performer fees, venue feels, scheduled performance"—and the specific type of machine learning model to use to generate these dynamic network maps—*e.g.*, "neural network ML model" or "support vector ML model."

The asserted claims thus differ from those in *Digitech*, where "[t]he method claimed" was "'so abstract and sweeping' as to cover any and all uses of a device profile." 758 F.3d at 1351 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 68 (1972)). As discussed above, the methods claimed here are highly specific and do not purport to preempt any and all uses of machine learning in the field of network maps and event schedules. *See* pp. 11-13, *supra*; pp. 24-25, *infra*. They are focused on the *specific* technological solutions to the drawbacks Recentive found in the conventional, prior art processes.

### D. The guidance from the Manual of Patent Examining Procedures is persuasive.

As Recentive explained (at 41-42), the MPEP offers persuasive guidance here, particularly for the asserted claims of the Machine Learning Training Patents. The Opening Brief further explained why the district court's effort to distinguish that guidance (because the MPEP example involved "a prior art machine learning technique") is unconvincing. *Id.* (citing Appx13). In response, Fox (at 33) abandons the district court's distinction and proposes a new one: that the MPEP example "sets

21

out a series of specific steps" that supposedly are absent from the Machine Learning Training Patents.

But, as discussed, the Machine Learning Training Patents *do* recite the specific steps explaining how to implement the innovative method. *See* pp. 11-12, *supra*. Naturally, the technological improvements in the Machine Learning Training Patents are not precisely the same as those in the MPEP example: the MPEP example is focused exclusively on "a method of training" a machine learning model, Opening Br. 41, while the Machine Learning Training Patents incorporate "iteratively training" the specified machine learning models as a step in the novel method for dynamically generating optimized event schedules, Appx150:2-49. That difference hardly makes the asserted claims insufficiently specific.

## II. Recentive's claims and well-pleaded complaint sufficiently allege an inventive concept under *Alice* step two.

At *Alice* step two, even a claim directed to an abstract idea is patentable if the claim recites "an inventive concept" that is "something more than the application of an abstract idea using 'well-understood, routine, and conventional activities previously known to the industry.'" *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (citation omitted). Because this is a factual inquiry, this Court has made clear that "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2018).

In its Opening Brief (at 42-46), Recentive highlighted a string of well-pleaded allegations in the complaint establishing that the asserted claims recite unconventional and non-routine technological improvements to the existing processes for generating network maps and event schedules. Even if "each claim element, by itself, was known in the art," this is a case in which "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Global Internet Servs. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir. 2016).

*BASCOM* is especially relevant here. That case involved a method for filtering content on the Internet. This Court deemed the step one inquiry a "close call" but, after crediting the complaint's allegations on a Rule 12(b)(6) motion, held that the claims passed step two at the pleading stage because "BASCOM has alleged that an inventive concept can be found in the ordered combination of claim limitations that transform the abstract idea of filtering content into a particular, practical application of that abstract idea." *Id.* at 1349, 1352 (brackets omitted). It did not matter that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself." *Id.* at 1349 ("BASCOM does not assert that it invented local computers, ISP servers, networks, network accounts, or filtering."). What mattered were the well-pleaded allegations that, "[b]y taking a prior art filter solution … and making it *more dynamic*

*and efficient* …, the claimed invention represents a software-based invention that improves the performance of the computer system itself." *Id.* at 1351 (brackets and quotation marks omitted; emphasis added). That "*specific method* of filtering Internet content cannot be said, as a matter of law, to have been conventional or generic." *Id.* at 1350 (emphasis added).

So too here. As the allegations in the complaint make clear, Recentive's specific and concrete application of machine learning techniques is inventive because it is an unconventional method that makes the existing technological processes more dynamic and efficient. *See generally* Appx37-71; Opening Br. 44. Among other things, conventional, prior-art methods were "static," "fixed on one default configuration," "unable to forecast the impact of a proposed schedule change," and "unable to prioritize certain parameters or target criteria in the creation of event schedules." Appx41(¶18). In short, they effectively involved quasi-informed guesswork. Recentive's claims add numerous unconventional innovations beyond the general use of machine learning, including the very ability to use specified parameters or target criteria and update maps dynamically that were missing in the prior art. Appx41-44(¶¶19-23); *see also* Appx47-48(¶¶27-30); Appx52-53(¶¶32-35).

*BASCOM* emphasized that the claims did not "preempt all ways of filtering content on the Internet; rather, they recite a specific, discrete implementation of the

abstract idea of filtering content." 827 F.3d at 1350. Recentive's claims likewise do not purport to preempt all ways of generating and automatically updating network maps in real time. Rather, Recentive claims are focused on the application of a specifically claimed class of techniques: the application of machine learning algorithms (and, in the case of the Machine Learning Training Patents, two specific machine learning models). Fox does not (and cannot) realistically argue that there are not other ways of automatically updating network maps in real-time beyond machine learning models. Moreover, Recentive's claims do not even purport to preempt all ways of applying machine learning in the field of network maps and event schedules. *See* pp. 11-13, *supra*. Recentive claims only the discrete and inventive applications recited in the claims.

Fox does not even attempt to distinguish *BASCOM* or the other cases cited in Recentive's Opening Brief. *See* Fox Br. 34-36. Instead, Fox argues that the complaint's allegations regarding inventiveness are "conclusory." *Id.* at 41 (quoting *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.* ("*IBM*"), 50 F.4th 1371, 1379 (Fed. Cir. 2022)). That is wrong. As discussed, the complaint specifically and plausibly alleges, for example, that "conventional processes and systems used to generate network maps and event schedules were static," "fixed on one default configuration," and "could not be iteratively trained," Appx41(¶18), and that Recentive's inventions differed from and improved upon these conventional

processes, Appx41-44(¶¶19-23); Appx47-48(¶¶27-30); Appx52-53(¶¶32-35). These allegations are precisely the type of specific allegations that the district court was required to accept as true at the pleading stage.

Contrary to Fox's brief, *IBM* is not analogous. In *IBM*, the claims merely recited a list of functions "without describing how any of those functions are performed." 50 F.4th at 1382. Here, however, the asserted claims here and the well-pleaded allegations sufficiently explain *how* the claimed methods achieve the technological improvements. *See* pp. 11-13, *supra*. Moreover, in *IBM* this Court found that "[a]ny of the patent's improved efficiency comes not from an improvement in the computer but from applying the claimed abstract idea to a computer display." 50 F.4th at 1382. As discussed above, Recentive's inventions improve the software-based processes themselves by changing their functionality and making them more dynamic, efficient, and accurate. *See* pp. 6-9, *supra*. The claimed methods go well beyond applying an abstract idea on a computer.

Finally, even if Recentive's allegations of inventiveness were conclusory, the district court should have granted leave to amend. *See* pp. 28-30, *infra*. The district court either "erred by not accepting [Recentive's] allegations as true" at *Alice* step two, *Cellspin*, 927 F.3d at 1317-18, or by not granting leave to amend if the allegations were too conclusory.

**III. The district court inappropriately resolved disputed questions of fact and claim construction.**

The district court erroneously rejected at the pleading stage Recentive's argument that the claim language relating to machine learning should be construed as referring to "generic" techniques, not specialized ones. *See* Opening Br. 30-31. In response, Fox argues (at 36-38) that Recentive did not "identify the claim terms and proposed constructions that it believes would change the Section 101." But, in opposing the motion to dismiss, Recentive flatly disputed Fox's argument that the claimed "'machine learning' techniques are 'generic' or merely 'known mathematical techniques.'" Appx392. Nonetheless, the district court adopted Fox's proposed construction that the patents-in-suit claim "known generic mathematical techniques." Appx16; *see also* Appx21. That was error.

The district court purported to dodge this factual dispute by reasoning that "iterative training *can* itself be a generic part of machine learning, a generic technique." Appx11 (emphasis added). But the court cited no *allegations* to support that finding, only remarks by Fox's counsel at the hearing. *See id.* (quoting Appx617). Moreover, the district court ignored Fox's argument that the claims recited a specialized iterative training technique adapted specifically to the needs of generating optimized network maps and event schedules. At the pleading stage, the district court should have resolved these disputed issues in Recentive's favor.

The district court also erroneously resolved the parties' factual dispute as to

27

the qualitative differences between machine learning analytical functions and human mental processes. *See* Opening Br. 31-32. Fox argues that the district court accepted Recentive's factual allegations that machine learning techniques are qualitatively distinct from human mental processes, Fox Br. 40, but that mischaracterizes the district court's decision. Fox argued below that the patents-in-suit are directed to nothing more than "automating existing human processes," which "have been undertaken by humans for decades." Appx190-94. That is exactly the opposite of what Recentive alleged in its complaint. And, contrary to Fox's brief on appeal, the district court adopted Fox's position below instead of accepting Recentive's allegations as true. While the district court paid lip service to Recentive's allegations, the court went on to find that "humans can engage in the mathematical techniques to perform machine learning (albeit slowly)." Appx19. That improperly rejects the well-pleaded allegations in the complaint. *See* Opening Br. 40.

## IV. The district court should have granted leave to amend.

In arguing that leave to amend would be futile, Fox complains that Recentive did not "attach an expert declaration" or "offer to attach" one. Fox Br. 43-44. But all that is necessary to satisfy *Alice* step two are well-pleaded allegations. *See, e.g.*, *Aatrix Software, Inc.*, 882 F.3d at 1126-27 ("[P]atentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)."); *Cellspin*, 927 F.3d at 1317-18 (same); *Weisner*, 51 F.4th at 1085 (same);

*see also* Opening Br. 45-46.

Moreover, Fox's argument with respect to *Alice* step two is that Recentive's complaint did not allege "plausible and specific factual allegations" of an inventive concept. Fox Br. 41-42. If so, then Recentive could cure that problem with an amended complaint. Recentive could further describe the "the drawbacks of conventional techniques" and their reliance on "crude and suboptimal generalizations," Appx42-44 (¶¶22-23)—*e.g.*, by alleging that conventional processes (including those implemented by Fox before Fox copied Recentive's invention) relied heavily on consumer-survey questionnaires and freewheeling extrapolation from historical data rather than a dynamic and iterative machine-learning based approach.

To the extent that Fox suggests (at 44) that leave to amend was properly denied because the complaint had been amended once, that does not speak to futility. *See* Appx27. And Third Circuit law is clear that, even when a party has amended the complaint once, a district court considering a 12(b)(6) dismissal "'must permit a curative amendment unless such an amendment would be inequitable or futile.'" *Estate of Lagano v. Bergen Cty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014) (citation omitted); *see also Haberle v. Troxell*, 885 F.3d 170, 182 & n.12 (3d Cir. 2018) (same).

In any event, as Recentive explained at the hearing on the motion to dismiss,

the reason why a second amended complaint could be useful is because "Fox's theory as to what the abstract idea is at issue here has changed multiple times": Fox initially focused "on the automation of known mental processes" and only later settled on its ultimate argument "about mathematical algorithms used to manipulate information." Appx615-616. Recentive should be permitted a clean shot at curative amendments that address the purported defects identified by the district court.

***

The district court's decision, if allowed to stand, would strip Recentive of patent protection for specific and groundbreaking technological innovations in the field of network maps and event scheduling—innovations that transformed the field from quasi-informed guesswork to complex data analytics. Section 101 does not permit that result, which would allow Fox to free-ride on Recentive's hard work and innovation.

**CONCLUSION**

This Court should reverse.

Respectfully submitted,

Alexandra D. Valenti
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8800
Fax.: 212.202.4038

*/s/ David J. Zimmer*
Robert Frederickson III
David J. Zimmer
Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
Tel.: 617.570.1000
Fax.: 617.523.1231

March 22, 2024

*Counsel for Plaintiff-Appellant*
*Recentive Analytics, Inc.*

**CERTIFICATE OF SERVICE**

I, David J. Zimmer, hereby certify that on March 22, 2024, I caused a copy of the foregoing and any attachments and addenda to be served on counsel of record for Appellees through ECF service.

*/s/ David J. Zimmer*
David J. Zimmer

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1).  This brief contains 6,995 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2016.

*/s/ David J. Zimmer*

David J. Zimmer